[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 860 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 861 
¶ 1. Diane and Thomas Pittman were divorced by order of the Lee County Chancery Court. Both parties have appealed, raising issues of classification of separate and marital property, the adequacy of alimony and child support, the award of attorney's fees, and certain other matters. We find that several of these issues merit reversal and we reverse and remand for further proceedings.
 FACTS
¶ 2. Thomas and Dianne Pittman were married in 1975 while they were students at Emory University. After she completed nursing school, Mrs. Pittman was employed as a nurse while her husband worked on his doctorate at Emory Seminary. Later, the couple moved to Oxford, Mississippi. At first Mr. Pittman was a minister at a local church and Mrs. Pittman continued as a nurse. Mr. Pittman later joined the staff of the Tupelo Daily Journal newspaper as a religion editor and community representative. The couple moved to Tupelo in 1979 because of the job change.
¶ 3. In 1980, Mrs. Pittman's grandmother and the couple purchased a home in which to live together. The grandmother paid half the purchase price while the Pittmans paid the other half. Title to a one half interest in the home was taken in the grandmother's name and the other one half was in the name of the husband and wife. Additional money was spent in renovations with the cost split between the grandmother and the couple. At the grandmother's death in 1990, she left her one half interest solely to Mrs. Pittman.
¶ 4. Mrs. Pittman continued to work until the birth of the couple's first son in 1982. After the birth, she stayed at home to care for their son and for a second son born in 1986. While at home, she cared for the grandmother, children and home as well as worked in the community promoting her husband's career.
¶ 5. Mr. Pittman continued working for the Tupelo Daily Journal
and in time moved into a major position at the paper. However, in 1996 the marriage began to unravel, at least in part because of Mr. Pittman's adulterous relationship with one of his co-workers. He moved from the marital home in August 1996 and was given a mandatory leave of absence from the Tupelo Daily Journal in January 1997. He eventually resigned his position. Along with three members of his family, he formed PH Publishing LLC, which purchased another newspaper. He now works for the paper and draws a guaranteed payment per month along with additional expenses paid by the company.
¶ 6. Mr. Pittman filed for divorce in December 1996 citing habitual cruel and inhuman treatment. Mrs. Pittman filed a cross-complaint on the ground of adultery. Mr. Pittman has admitted to the affair and was continuing in it at the time of the trial. After a three-day trial, the chancellor granted Mrs. Pittman a divorce on the ground of adultery. She was awarded *Page 862 
custody of the two children and given rehabilitative alimony and child support. The residence was ordered sold and the proceeds divided equally. Mrs. Pittman was granted the household furniture. Additional furniture inherited by Mrs. Pittman was found to be her separate property. The wife's family trust, in which she had only an income interest, was found to be her separate property. Mr. Pittman's pensions and retirement accounts were declared to be his separate property. Both parties appeal on numerous grounds.
 DISCUSSION 1. Equitable distribution
¶ 7. Both parties appeal the chancellor's classification and division of their marital and separate property. An appellate court should not reverse a chancellor's ruling unless it is manifestly wrong, clearly erroneous, or an improper legal standard was employed. Arthur v.Arthur, 691 So.2d 997, 1001 (Miss. 1997).
¶ 8. Specific guidelines for the equitable division of marital property have been enunciated. First, the chancellor must identify the property as marital or separate. Hemsley v. Hemsley, 639 So.2d 909, 914 (Miss. 1994). Marital property consists of the assets acquired or accumulated during the course of the marriage. Id. Separate property is that which is acquired before or outside of the marriage. MacDonald v.MacDonald, 698 So.2d 1079, 1083 (Miss. 1997).
 a. Equal division of marital home
¶ 9. Mrs. Pittman contends that the chancellor erred in granting Mr. Pittman a one-half interest in the equity of the home. Since she inherited her grandmother's one half interest in the home, Mrs. Pittman contends that one half is her separate property and not subject to equitable division. However, title to property is not relevant in determining whether it is a marital or separate asset. Draper v. Draper,627 So.2d 302, 305 (Miss. 1993). Whether a spouse has no title at all, or as here, whatever might be the fractional ownership of property, is not conclusive. The possession or proportion of title does not "create any greater property interest for the spouse in whose name it is held, or jointly held. The issue in divorce is which property is `marital property,' subject to equitable distribution, and that determination proceeds absent any presumption based on title." Pearson v. Pearson,761 So.2d 157, 163 (Miss. 2000).
¶ 10. Therefore, even if legal title in the marital home would be three-quarters in Mrs. Pittman and one-quarter in Mr. Pittman, the chancellor needed to determine whether the house was marital property. Precedents have made it plain that one spouse's contribution of all the funds necessary for the purchase does not guide the court in determining the marital or separate property character. "A spouse who has made a material contribution toward the acquisition of an asset titled in the name of the other may claim an equitable interest in such jointly accumulated property." Draper, 627 So.2d at 305. Under this concept, a wife who stays at home to care for the children or home and does not make direct financial contributions to the marriage still gains an interest in the martial home equivalent to that of a husband. Similarly, we find that a husband who provides for his family by earning the money necessary to pay the expenses can gain an equivalent interest to that of his wife who inherited a substantial interest in the property.
¶ 11. This was the marital home. There is no evidence that Mrs. Pittman used one portion of the home and that it was unavailable to be used by Mr. *Page 863 
Pittman. Regardless of whether one spouse purchased the majority of the interest in the home with inherited money or, as here, actually inherited the interest itself, the home is marital property. Perhaps if Mrs. Pittman's grandmother died fairly close to the separation of the spouses, and certainly if she died after the separation, other considerations would arise. But it was appropriate for the chancellor to find this marital home to be marital property.
¶ 12. However, it must be remembered that equitable distribution of marital property does not mean equal distribution. Mississippi is not quite a community property state. However, six years passed after the death of the grandmother and the separation of the parties. During that time Mr. Pittman's income was the principal source of funds for the household. The chancellor found it to be equitable to have the proceeds of the sale of the home divided evenly. We find no error in that exercise of discretion.
 b. Bank accounts, life insurance, and retirement/pension plans
¶ 13. Next, Mrs. Pittman contends that the chancellor erred in classifying several checking and saving accounts, three pension or retirement plans, an insurance policy and the interest in PH Publishing, LLC as her husband's separate property.
¶ 14. Retirement and pension plans accumulated during the marriage are marital property subject to equitable division. Godwin v. Godwin,758 So.2d 384, 387 (Miss. 1999). Therefore, the chancellor erred in finding that the three pension and retirement plans were Mr. Pittman's separate property. They should have been classified as marital property. How they are to be divided is not resolved by that classification. We reverse and remand this issue for equitable division of these marital assets.
¶ 15. Disputed also was the classification as the husband's separate property of two bank accounts that at the time of a financial statement totaled $11,000 and a life insurance policy valued at about $4,000. Mr. Pittman presented evidence that by the time of trial these funds had all been spent on his own living expenses, on mortgage payments on the marital home, on income taxes, and to make his temporary support payments of, at various times, either $1,500 or $3,500 per month. There was proof that the savings account was used to pay 1997 taxes. Mr. Pittman testified that he deposited about $8,750 per month in one of these accounts and had expenses of about the same. For a time the source of at least $5,000 per month of the funds in this account was Mr. Pittman's income from the Tupelo newspaper. It is true that Mr. Pittman made payments during the pendency of the divorce far in excess of what was in those accounts. As to the value of the insurance policy, Mrs. Pittman makes no argument regarding the policy on appeal and thus we will consider only the accounts.
¶ 16. The income earned by a spouse after a separate maintenance order has been found to be separate property. Godwin, 758 So.2d at 386. The significance of the order arises from the fact that legal separation is not recognized in Mississippi. If it were, funds earned thereafter fairly naturally might be considered outside of the marriage. The separate maintenance order in Godwin, an order that remained in effect for seven years, was found to be an equivalent line of division. Id. This Court has distinguished Godwin and found marital assets still to be accumulating when no separate maintenance order is entered. Graham v.Graham, 767 So.2d 277, 281 (Miss.Ct.App. 1999). *Page 864 
¶ 17. With the Pittmans here, there was a related dividing line — on September 18, 1997, an order was entered requiring temporary support. This is beyond mere physical separation of the parties since a judicial recognition of the separation has been acquired and the procedures of chancery court have been invoked sufficiently to gain a support order. The dissent says that the two kinds of orders — separate maintenance and temporary support — are distinguishable. Nothing in this opinion says otherwise. Either could be followed by a divorce or by a reconciliation; the dissent's distinctions to the contrary are unconvincing. It is also argued that this elaboration on theGodwin doctrine creates a dilemma for the non-income earning spouse. Seeking support could end the right to share in subsequent increases in the marital estate, while eschewing support could lead to financial struggles. Certainly the latter is true and should be avoided. The existence of the former is not a dilemma but a Godwin "line of demarcation." The divorce itself ends the creation of new marital property. Godwin states that a separate maintenance agreement at least interrupts it as well. What joins the concept of a separate maintenance agreement to that of temporary support is that both are practical recognitions that the spouses are not longer living together as husband and wife and support for separate households must exist. Both are formal but tentative steps to an uncertain destination, perhaps back to a successful marriage or in a different direction to a divorce.
¶ 18. We find that in sufficient relevant ways the temporary support order serves the same purposes as a separate maintenance order and that property accumulated thereafter is separate property.
¶ 19. There is a limit to the Godwin approach:
 Assets acquired after an order for separate maintenance should be considered the separate property of the parties, absent a showing of either (1) contribution to the acquisition of the asset by the other spouse as contemplated in our decisions in Ferguson v. Ferguson, 639 So.2d 921, 928-29 (Miss. 1994), and Magee v. Magee, 661 So.2d 1117, 1123 (Miss. 1995) or, (2) acquisition of the asset through the use of marital property.
Godwin, 758 So.2d at 386.
¶ 20. Returning to the accounts with the Godwin line of demarcation in mind, we note that wages or salary earned by a spouse prior to a temporary support or separate maintenance order would be marital property. However, even if the funds in these accounts were initially marital property, the evidence is that they were then used on marital expenses required by the separation. The physical separation began in August 1996; the divorce complaint was filed in December; voluntary payments began in January 1997; but the support order was not entered until September 1997. Only on that last date does the Godwin
principle begin to apply.
¶ 21. The account was maintained at an equivalent size because it was replenished each month with Mr. Pittman's salary, but the money in the account at the time of divorce was largely if not entirely separate property. There is no evidence that Mr. Pittman was using what was marital property in the accounts at the time of separation for anything other than the living expenses of them both. The chancellor found no wasteful dissipation of assets by either party and that is not contested on appeal. Had the chancellor classified the accounts as marital property, the effect would be that the separate property then *Page 865 
in the accounts, since it was Mr. Pittman's post-support order salary that was then in the account after the initial funds deposited there were spent, would be judicially transformed into marital funds. We find that classifying as separate property the funds then in this checking account and also other accounts that may have been depleted to make marital payments was consistent with the evidence.
¶ 22. To be clear, we are holding only that if marital funds in an account are used for legitimate expenses of both parties during a separation, the person who has been making the disbursements from the account does not, on the facts presented here, then need to provide equivalent amounts of separate funds at the time of the actual divorce as part of a distribution of marital property.
 c. Children's educational trusts
¶ 23. Mrs. Pittman also claims that two educational trusts for the children, one with a value of $22,500 and the other valued at $53,000, should have been classified as the children's separate property and not as a marital asset. We find that classifying them as marital property is the better of the imperfect choices, since they are assets that permit the financial needs of the marriage, i.e., the education of children born to the marriage, to be met. However, in evaluating the equity of the division of marital property, the value of these accounts should not be considered equivalent to the dollar value of other marital property. Whichever spouse is assigned this $75,000 marital asset, and here it was the wife who was given the accounts to manage, that dollar figure might at least mentally be excluded from the total value of the assets allocated to that spouse when the chancellor is reviewing the equity of the overall division.
¶ 24. The dissent states that the property should be declared the children's property. That would serve the same purpose as the point made here. Wherever that property is assigned for its management, its value should not be considered as part of the equitable distribution of the marital property to that spouse.
 d. Mr. Pittman's five percent interest in new business
¶ 25. The final and significant allegation of error made by Mrs. Pittman on equitable distribution is that her former husband's interest in his new business was classified as separate property. There was evidence that Mr. Pittman did not have to invest financially as did other owners when PH Publishing, LLC was formed. His full-time work on the business was colloquially referred to as "sweat equity" that replaced a capital investment. He worked for a year without pay to gain a five percent interest in the company. Mrs. Pittman alleges that his interest is worth $50,000, and that this should be classified as marital property.
¶ 26. The chancellor found that this was not marital property because Mrs. Pittman had made no contribution to its acquisition. Mr. Pittman began working for the new company in May 1997, several months after the separation but before the September 1997 order for temporary support. Had marital funds been used to buy that interest in the company, then Godwin would hold that the new asset is marital property despite a prior support order. Godwin, 758 So.2d at 386. However, a spouse's income after a court order requiring support is separate property; what that spouse gains in lieu of a cash income would also be separate property. Here, we do not have income but a property interest that is being earned over time in *Page 866 
lieu of wages, a share of profits, or other income.
¶ 27. We find it equitable to divide the asset earned as would be divided earned income. For about a third of the time that Mr. Pittman was earning his five percent interest, what he earned would be considered a marital asset. Our understanding of the dissent's view is consistent with this. Whether he is buying the interest with marital funds or earning it through his own labor, the interest being gained is martial property.
¶ 28. It appears that the disagreement with the dissent arises only as to a line of demarcation created by the order for temporary support. It might be argued that Mrs. Pittman would be entitled to have the entire interest considered marital property since the process began before the temporary support order, but we conclude otherwise. However, had Mr. Pittman quit on the day of the support order, apparently no part of the interest would ever have been gained. The marital property nature of the interest did quit on the day of the support order, and thus we find that a fractional allocation is appropriate. This is similar to classifying as a marital asset the percentage of a retirement account that is earned by a spouse during the time period of the marriage. Parkerv. Parker, 641 So.2d 1133, 1138 (Miss. 1994).
¶ 29. The chancellor's reliance on the fact that Mrs. Pittman was not contributing to its earning may factually be correct, but this again causes us to turn to Godwin. Until the formality of the court order on temporary support or separate maintenance, the effect of each spouse's earnings remains the same as if the couple were still physically and even happily residing in the marital home, contributing eagerly to each other's needs. We find that Mrs. Pittman is entitled to have some of the interest Mr. Pittman earned in this company be considered a marital asset. Whether it is roughly a third of the five percent, that is, strictly the fraction of the entire year that he worked to earn the interest that starts with his first day on the job and ends with the support order, or whether a different means to calculate the fraction is more equitable for reasons that the parties wish to raise, we leave for consideration on remand.
 e. Antique furniture and china, silver and jewelry
¶ 30. Mr. Pittman cross appealed that valuable English and American antique furniture, and certain china, silverware and jewelry inherited by his wife should not have been classified as her separate property. Property accumulated or acquired during the marriage by either party is presumptively a "marital asset" which is subject to equitable division. Hemsley, 639 So.2d at 915. However, among the exceptions are assets inherited by one spouse. Id. at 914. Regardless of the means of acquisition, though, one spouse's separate property that has been utilized for family purposes may lose its separate identity. Johnson v.Johnson, 650 So.2d 1281, 1286 (Miss. 1994). By this use, the separate property may be converted into marital assets, absent an agreement to the contrary. Heigle v. Heigle, 654 So.2d 895, 897 (Miss. 1995).
¶ 31. There was some dispute by the Pittmans regarding whether "commingling" is the proper term for property other than cash in accounts. Quite often, whether funds have been commingled is the issue.E.g., Pearson v. Pearson, 761 So.2d 157, 164 (Miss. 2000); Tillman v.Tillman, 716 So.2d 1090, 1095 (Miss. 1998). Regardless of terminology though, we find that the furniture was transformed into marital property by its placement into the marital abode in the absence of any *Page 867 
evidence of exclusive use by Mrs. Pittman. There certainly could be factual questions on the margin of the use of personal property such as this — was a particular chair or desk only used by the person who inherited it; was some of the property placed in a room or building used only by the spouse who brought the separate property to the marriage? As to one spouse's individual use within the marital abode, though, that may in most circumstances be a matter of who equitably should be assigned that piece as opposed to its not being marital property at all.
¶ 32. Mr. Pittman includes jewelry, china and silver in this claim. The same analysis of use for marital purposes would apply to those items as well. If china and silver was stored and not used, it may well have kept its separate character. If it was used by the couple for entertaining or on other occasions, issues of its becoming marital property arise.
¶ 33. We reverse the finding that the entirety of the inherited property remained Mrs. Pittman's separate property and remand for equitable division. Those proceedings may raise the separateness of individual items of the property, but the presumption is that furniture and other items used by the couple in the marital home have become marital property.
 f. Trusts with Mrs. Pittman as income beneficiary
¶ 34. Additionally, Mr. Pittman appeals the classification as separate property of trusts set up by the Mrs. Pittman's grandparents and stocks given her at graduation. The combined value of the trusts at the time of the divorce was about $366,000. The wife is the income beneficiary of the trust, though the income is only $2,560 every three months. Evidence at the trial showed that the wife used the income from the trust as additional financial support for the family. Also, when the couple bought an interest in a vacation home, they borrowed from the trust. However, once the couple separated that property was sold and the trust was reimbursed. The actual trust corpus was not commingled with any marital assets. The trust administrator testified as to the terms of the trust. There was no evidence that Mrs. Pittman can draw upon the corpus other than potentially for a loan; the children are the remainderman though the trust apparently provides that Mrs. Pittman could designate an alternative beneficiary in her will.
¶ 35. We find no error in classifying the trusts as separate property. The income paid to Mrs. Pittman, which is only $850 per month, was included in her financial statement and will be discussed further when we address periodic alimony.
¶ 36. Finally, the stocks inherited and given to the wife by her family were not commingled and were properly classified as separate property.
¶ 37. After remand, the chancellor must classify the property consistently with this opinion. The equitable division that must be made is "based upon a determination of fair market value of the assets, and these valuations should be the initial step before determining division."Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss. 1994). No overall value for the marital and separate estates was determined in the initial decree, and that should be corrected on remand.
 2. Child support amount and security
¶ 38. Mrs. Pittman argues that the chancellor erred in calculating Mr. Pittman's income for the determination of the amount for child support. The chancellor found that Mr. Pittman's adjusted gross income was $2,540 per month. He was *Page 868 
ordered to pay twenty percent of this amount for a total of $569 per month in child support for both minor children including providing medical insurance. Any additional amounts in medical care not covered by the insurance would be split between both parties.
¶ 39. Mrs. Pittman argues that the court should have considered Mr. Pittman's previous salary at the Tupelo Daily Journal instead of his current salary in determining the amount of child support. She cites several cases in which a husband had voluntarily left previous employment to take a job paying less money. In those cases the court found that the children should not suffer and that the court should consider the parent's earning capacity. Selman v. Selman, 722 So.2d 547, 555 (Miss. 1998). In Selman, the Court found that husband's unilateral, voluntary act based on personal preferences does not diminish his responsibility to support his child. Id.
¶ 40. However, there was considerable suggestion in the transcript that Mr. Pittman had little choice except to resign from his previous employment and sign a contract not to compete within a certain geographical area. His voluntary act to have an affair may have been the cause of his departure, but we do not find that to invoke the principles of voluntary reduction in income that we just discussed. After some of the penalty for the affair was exacted, which included the loss both of a job and a marriage, the ex-husband's earning capacity had to be evaluated by the chancellor. We look at that evidence, which as we will discuss includes more than just the dollar amount of his then-current salary, but we do not find controlling what he was making while at the Tupelo paper.
¶ 41. Mr. Pittman and several family members formed a company that purchased a newspaper, where Mr. Pittman now receives a guaranteed payment of $5,375 per month. In addition, he receives several benefits that may be considered income because the company reimburses him or directly pays for some expenses that appear personal in nature. Although this Court does not agree that Mr. Pittman voluntarily chose a lesser paying job, we agree with Mrs. Pittman that his actual income has not accurately been determined. The chancellor must "[d]etermine gross income from all potential sources that may reasonably be expected to be available. . . ." Miss. Code Ann. § 43-19-101(3) (Rev. 2000). The chancellor considered only the actual salary. We find that there are substantial additional payments to Mr. Pittman from this closely-held company that replace what otherwise would be personal expenditures by him. Others of the payments are for business purposes and are not allocable as gross income for purposes of applying the guidelines for child support.
¶ 42. In addition, even though we have held that Mr. Pittman's lost income from the Tupelo newspaper is not the basis on which to judge his income, neither do we find that the properly recomputed income from his new position is necessarily the limit of that figure. The new business was just beginning. Assuming that a properly calculated real income for Mr. Pittman is less than what he had previously been making, the chancellor would be justified in evaluating his income capacity with at least some regard for that former employment. Those considerations could lead to a variety of remedies, including providing for periodic re-evaluation of Mr. Pittman's income.
¶ 43. We reverse and remand for a more detailed consideration of the non-salary payments to Mr. Pittman by his employer in order to determine which *Page 869 
payments are for normal personal expenses and not properly business expenses. A new estimate of income can be made. His reasonable income capacity may be addressed as well. The passage of time since the original divorce decree may make more easily calculable the income that Mr. Pittman reasonably can expect from his new position.
¶ 44. Mrs. Pittman has also alleged error in the trial court's failure to require Mr. Pittman to maintain a life insurance policy with his children as beneficiaries, to secure the payment of the support. Mr. Pittman presently maintains such a policy voluntarily and argues that a court order is unnecessary. That may well be, but the absence of a court order will leave the matter solely in Mr. Pittman's discretion in the future. Courts can not easily judge commitment and motives, and thus on occasion, orders may be entered to require that which might have been done even without an order. The chancellor should address the issue of life insurance again on remand, but with the primary consideration being what best assures the continuation of child support.
 3. Tax exemptions and uncovered medical expenses
¶ 45. Mrs. Pittman argues that she should have been awarded both of the tax exemptions for the two minor children. Each parent was instead given the right to claim one minor child's tax exemption. Mrs. Pittman has custody of both children, but Mr. Pittman provides support for both.
¶ 46. A chancellor has the power to allocate the exemptions in a divorce decree and require the parties to sign the necessary documents to present to the Internal Revenue Service. Nichols v. Tedder, 547 So.2d 766, 780 (Miss. 1989). Equity was achieved by this division of the income tax benefit. We find no error here, nor by the division of the uncovered medical expenses.
 4. Periodic Alimony
¶ 47. Mrs. Pittman contends that she should have been awarded long term periodic alimony. Instead, Mr. Pittman was ordered to pay $500 per month for forty-eight months in rehabilitative alimony. When the appellate issue is an alleged inadequacy or denial of alimony, we will reverse only where the decision is seen as so oppressive, unjust or grossly inadequate as to be an abuse of discretion. Monroe v. Monroe,612 So.2d 353, 357 (Miss. 1992).
¶ 48. In awarding alimony, the following factors must be considered:
 (1) The income and expenses of the parties; (2) the health and earning capacities of the parties; (3) the needs of each party; (4) the obligations and assets of each party; (5) the length of the marriage; (6) the presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care; (7) the age of the parties; (8) the standard of living of the parties, both during the marriage and at the time of the support determination; (9) the tax consequences of the spousal support order; (10) fault or misconduct; (11) wasteful dissipation of assets by either party; or (12) any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.
Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss. 1993).
¶ 49. The chancellor explicitly considered each of the factors. We have already found that for one of the factors, the income of the husband, the chancellor erred. Also, Mrs. Pittman's monthly income was erroneously found to be $5,520. *Page 870 
This amount included the $2,100 in temporary support that Mrs. Pittman received. That disappeared with the divorce decree. The approximate $850 per month received from the trusts was listed in her financial statement. Mrs. Pittman reported monthly expenses in the amount of $5,593.50 for herself and the two minor children. The chancellor also weighed heavily the two trust funds set up by Mrs. Pittman's family. Mr. Pittman considers that a significant matter as well. So would we if there was evidence that the trusts provided meaningful income to Mrs. Pittman. However, our examination of the testimony is that the trusts are for the couple's children and that Mrs. Pittman receives about $2,000 per quarter from the trusts. Mrs. Pittman was described as the interest income beneficiary without meaningful access to the corpus of the trust. Why a greater amount of income was not earned is unclear, but the amount was not contested at trial. Whatever amount is received should be considered in determining whether periodic alimony is justified, but here there is not nearly sufficient evidence to permit a finding that the trusts eliminate the need for periodic alimony.
¶ 50. Reversal is warranted when the needs of the family cannot be met by the joinder of the alimony with the recipient spouse's earning capacity. Box v. Box, 622 So.2d 284, 288 (Miss. 1993). To the extent of his ability to pay, a former husband is required to support his wife in the manner to which she has become accustomed. Brendel v. Brendel,566 So.2d 1269, 1272 (Miss. 1990). Though Mrs. Pittman has been a nurse in the past, she had not been employed since their first child was born in 1982. There was no evidence that her re-entry into workforce after this length of time will provide the kind of income necessary to approach that standard of living.
¶ 51. Moreover, Mr. Pittman's income was still reaching its potential after his change of employment. Though we have agreed that his departure from Tupelo should not be analyzed under the voluntary reduction in income caselaw, that former income is a factor in determining that Mr. Pittman is reasonably likely to earn more in the future than he was at the time of the divorce. Even after making allowances for the reduction in Mr. Pittman's present income, we find it manifest error not to have provided some measure of periodic alimony.
¶ 52. We reverse and remand for an appropriate award of periodic alimony.
 5. Miscellaneous debts
¶ 53. Joined in Mrs. Pittman's brief with the issue of the sale of the house is that from the equal division of the proceeds of the sale of the house Mrs. Pittman's car loan is to be satisfied. She joins with the argument about tax exemptions an argument that Mr. Pittman should pay all uncovered medical expenses. We make no rulings on those, other than to state that the chancellor on remand should re-evaluate those debts based on whatever is done regarding a new equitable distribution of property and the award of periodic alimony.
 6. Attorney's Fees
¶ 54. Mrs. Pittman was awarded $4,000 in attorney's fees and the court costs were divided between them. Her attorney had presented evidence of much greater fees. Awarding attorney's fees is in the sound discretion of the chancellor and will be affirmed absent manifest error.Grogan v. Grogan, 641 So.2d 734, 744 (Miss. 1994). Unless the spouse who desires fees can prove an inability to pay, they should be denied. Id. *Page 871 
¶ 55. If fees are to be awarded, they should be in a sum sufficient to secure a competent attorney. Rees v. Rees, 194 So. 750 (Miss. 1940).
 The fee depends on . . . relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.
McKee v. McKee, 418 So.2d 764, 767 (Miss. 1982).
¶ 56. Since we are reversing on a number of financial issues, we also reverse the amount of the award of attorney's fees. After resolving the other financial matters, the chancellor should again consider whether Mrs. Pittman has an inability to pay and if so, the proper amount of fees under the applicable criteria.
 SUMMARY
¶ 57. On remand, there must be a new equitable distribution of the property consistent with our statements regarding various items originally classified as separate property. Mr. Pittman's income must be calculated with due consideration of personal items paid for by P.H. Company, LLC. That will lead to a recomputation of the amount of child support. Periodic alimony must be awarded, considering the proper figures for the incomes of each party. Finally, Mrs. Pittman's entitlement to attorney's fees and their amount should be reconsidered in light of the new distribution.
¶ 58. THE JUDGMENT OF THE CHANCERY COURT OF LEE COUNTY IS AFFIRMEDIN PART, AND REVERSED AND REMANDED IN PART. THE COSTS OF THIS APPEAL AREASSESSED EQUALLY TO THE PARTIES.
McMILLIN, C.J., BRIDGES, THOMAS, IRVING, MYERS, JJ., CONCUR. PAYNE,J., CONCURRING IN PART AND DISSENTING IN PART, WITH SEPARATE WRITTENOPINION, JOINED BY LEE, J. KING, P.J., JOINS THE MAJORITY OPINION ON ALLISSUES SAVE THAT OF DECLARING THE CHILDREN'S EDUCATIONAL TRUST TO BEMARITAL PROPERTY, ON THAT ISSUE, HE DISSENTS AND JOINS IN THAT PORTION OFTHE DISSENT. CHANDLER, J., NOT PARTICIPATING.