866 So.2d 508 (2004)
Jack E. HANKINS, Jr., Appellant
v.
Amparo HANKINS, Appellee.
No. 2002-CA-01783-COA.
Court of Appeals of Mississippi.
February 24, 2004.
*509 T. Mack Brabham, Mccomb, attorney for appellant.
John H. Ott, Mccomb, attorney for appellee.
EN BANC.
THOMAS, J., for the court.
¶ 1. Jack E. Hankins, Jr. appeals portions of the property settlement made by the Pike County chancellor as part of the divorce from his wife, Amparo Hankins. Jack assigns three points of error for appellate review:
I. THE COURT FAILED TO HONOR THE PREMARITAL AGREEMENT OF THE PARTIES THAT EACH PARTY WOULD OWN AND RETAIN ALL INTEREST TO ALL PROPERTY OWNED SEPARATELY BY THEM PRIOR TO OR ACCUMULATED DURING THE MARRIAGE.
II. EVEN IF THE PREMARITAL AGREEMENT WAS INVALID, THE COURT ERRED IN AWARDING ANY EQUITABLE DISTRIBUTION OF GREATER THAN $10,000 TO THE APPELLEE.
III. THE COURT ERRED IN AWARDING "TEMPORARY REHABILITATIVE ALIMONY" TO THE APPELLEE.
¶ 2. Finding error, we reverse and remand to the chancery court.

FACTS
¶ 3. Jack and Amparo Hankins were married in October 1994. The day before the wedding, Amparo presented Jack with a pre-marital agreement, handwritten by an attorney, which protected her assets and accretions thereto. The assets, valued at approximately $300,000, were listed in the agreement and were to remain Amparo's sole separate property. Jack's assets *510 were not mentioned in the agreement but, before signing, he verbally expressed the desire to have the same protections for his property to which Amparo agreed.
¶ 4. Amparo, a resident of Texas at the time of the marriage, moved to Mississippi and the couple lived in the house Jack had inherited prior to the marriage until February, 2002. Amparo left the marital home at that time and petitioned for a divorce upon the grounds of adultery and habitual cruel and inhuman treatment.
¶ 5. Trial on the matter was held on August 29, 2002. The chancellor granted Amparo a divorce on the ground of adultery. The chancellor valued the marital estate at $375,726. This amount included the value of Jack's house, the ten acres comprising the residential lot and several pieces of capital equipment acquired for Jack's chicken farm during the marriage.[1] The marital debt was assessed at $80,500.
¶ 6. The chancellor awarded Jack possession of $371,676 of the total assets, including the house, acreage, and the farm equipment. Jack was also held responsible for $80,000 of the marital debt. Amparo received $67,200 as her share of the marital estate, her jewelry, a vacuum cleaner, VHS camera and miscellaneous dishes. She was assigned the remaining $500 of marital debt.[2]
¶ 7. The chancellor also found Amparo entitled to receive temporary rehabilitative alimony in the amount of $650 per month for twenty-four months. Jack was ordered to provide health insurance for Amparo for this same time period but if he was unable to procure insurance, Jack was to pay to Amparo an additional $350 per month. Following a motion for reconsideration, the time period of these requirements was reduced to eighteen months.

ANALYSIS
1. The prenuptial agreement
¶ 8. Jack first argues the chancellor failed to honor the oral agreement Amparo made to extend the same terms to his assets as were used to protect hers in the written agreement. Specifically, Jack argues the oral agreement was an inducement used to persuade him to sign the written one and must therefore be enforced. He also argues the public policy in favor of marriage would be damaged by discouraging people from marrying in order to preserve their assets.
¶ 9. There is already in place a mechanism by which people may protect their separate estates before entering marriage as Amparo amply demonstrates in this case. Couples may enter into prenuptial agreements which the courts of this State generally will enforce but that agreement must be in writing. Miss.Code Ann. § 15-1-3(b) (Rev.2003). The statute of frauds has been in place for nearly a century without any demonstrated measurable negative impact upon the single persons of this State. Public policy is not unduly implicated.
¶ 10. However, although the oral agreement may not be enforced as a valid prenuptial agreement, it is not entirely meaningless to this case. Amparo has never denied making the agreement with Jack *511 and this agreement, whether intentionally or unintentionally fraudulent, should be considered by the chancellor when determining the equities of this case. We also note that even when a party is barred from seeking enforcement or damages for a breach of an oral agreement due to the statute of frauds, a separate cause of action based upon fraud may yet be available. McKellar's Estate v. Brown, 404 So.2d 550, 553 (Miss.1981).
2. Contents of marital estate
¶ 11. At the time of the marriage, Jack owned a house, a ten-acre residential lot upon which the house stood, a chicken farming operation and fifty-seven acres upon which the farm stood. Amparo owned a house and lot in Tyler, Texas, investment accounts and various personalty, none of which was characterized as marital property due to the prenuptial agreement. Jack's residence and land and some $192,476 worth of capital improvements to the chicken farm were included as part of the marital estate.
¶ 12. Jack claims all of this was erroneous because of the oral prenuptial agreement but, even if the agreement was invalid, Amparo is not equitably entitled to receive anything but a portion of the net value by which the farm increased during the marriage, the same for the value of the residential property and a return of $10,000 Amparo paid for new windows and siding for the house.
¶ 13. For purposes of divorce proceedings, the marital estate consists of property acquired or accumulated by the parties during the course of the marriage. Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994). Marital property so defined is subject to equitable distribution at the time of divorce. Id. Not all property acquired or accumulated during a marriage, however, is marital. Assets which are attributable to one of the parties' separate estates prior to or outside the marriage is non-marital property and not subject to equitable division. Id. at 914.
¶ 14. Even non-marital assets may lose their characterization as such if the party commingles the asset with marital property or uses them for familial benefit. Johnson v. Johnson, 650 So.2d 1281, 1286 (Miss.1994). Thus, the first duty of the chancellor is to categorize each asset as either marital or non-marital based upon the evidence presented. Craft v. Craft, 825 So.2d 605, 608 (¶ 11) (Miss.2002).
¶ 15. Amparo has never denied the house, lot and chicken farm were Jack's separate property at the time they married, but she argues the residential property became a commingled, and thus marital, asset due to their full-time occupation of the dwelling during the marriage, and the chicken farm capital purchases are marital by definition because they were acquired during the marriage. The chancellor agreed with this argument in its entirety, but we do not.
¶ 16. Amparo contributed nothing to the acquisition of the residence. If she is to have any interest in the property at all, it can only come about through the commingling doctrine. Upon the marriage, the dwelling was used as the sole marital residence and Amparo contributed to the maintenance and improvement of the house through her housekeeping efforts. This long-term family use of the property converted the residential house and lot into marital property.
¶ 17. The same cannot be said of the chicken farm, however. Like the residence, Amparo made no contribution to the original acquisition of this property. Unlike the residence, Amparo apparently had even less than negligible involvement in its operation. There was evidence that *512 Amparo loaned money to Jack for farm use, but all of the testimony indicates both parties treated these occasions as business dealingsAmparo expected to be repaid and that expectation was met. Amparo is no more entitled to an interest in the business on this basis than any other creditor who loans money and is repaid in full.
¶ 18. The mere fact that an asset is acquired during the marriage does not immutably characterize it as marital. As noted above, if the acquisition is made through the use of non-marital assets, that acquisition remains separate property. Jack bore the burden of establishing that the items acquired for the farm during the marriage were done so with his separate property. A & L, Inc. v. Grantham, 747 So.2d 832, 839 (¶ 23) (Miss.1999).
¶ 19. The testimony at trial and the exhibits submitted show the equipment was purchased through a bank loan made solely to Jack for which he alone is responsible. Amparo admits that she signed nothing nor guaranteed any bank loans of any type for Jack. Amparo has never claimed to have purchased this equipment or otherwise contributed to its purchase price, nor did she operate or work the farm in any fashion. Jack has met his burden of establishing that the farm itself was separate property and the capital acquisitions were made outside the marriage. The farm and the value of the equipment remain his separate property and should not have been included as part of the marital estate.
¶ 20. This, however, does not completely end the inquiry. As the supreme court has repeatedly discussed, the relationship between a wage-earning spouse and a homemaking spouse is symbiotic. We presume that the efforts of each make the contributions of the other possible. The contributions are to be considered equal. Hemsley, 639 So.2d at 915. Amparo is not entitled to a portion of the business itself or of the value of equipment but she is entitled to that which she helped to create. She is entitled to an equitable distribution of "the accumulated portion, or the increase in value" of the business during the course of the marriage. Craft, 825 So.2d at 609 (¶ 14) (see also Carrow v. Carrow, 642 So.2d 901, 907 (Miss.1994)). It is this increase in value which should have been included in the calculation of the marital estate.
3. Temporary rehabilitative alimony
¶ 21. Because the value of Amparo's separate estate is roughly equivalent to his own, Jack argues the chancellor erred in awarding her temporary rehabilitative alimony. With a debt-free home of her own in Texas, vehicle, personal property and significant investment accounts, Amparo is not left without sufficient assets to meet her needs and therefore should not be awarded alimony in any form.
¶ 22. While there is a significant amount of persuasiveness to this argument, we find it unnecessary to address this question. "Alimony and equitable distribution are distinct concepts, but together they command the entire field of financial settlement of divorce. Therefore, where one expands the other must recede." Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss.1994). Because we must remand the issue of equitable distribution, the chancellor will be free to review the issue of alimony.
¶ 23. THE JUDGMENT OF THE PIKE COUNTY CHANCERY COURT IS REVERSED AND REMANDED FOR FURTHER ACTION CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
*513 McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. SOUTHWICK, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J., BRIDGES, LEE AND IRVING, JJ.
SOUTHWICK, P.J., concurring.
¶ 24. I agree with the majority in its result but find that existing law on marital property is in need of revision. Thus I write separately.
¶ 25. The classification of property is a central issue in the sending of divorced spouses on their separate ways. There is an unnecessary rigidity in requiring that property be labeled as entirely "marital" or as entirely "separate." Indeed, as to the business, the majority agrees that potentially only the increase in value should be considered as marital property. My concern is about the marital residence.
¶ 26. In this case, though, I agree that under existing precedents the chancellor properly labeled the marital abode as completely marital property. That is because the marriage was sufficiently long and the contributions of Mrs. Hankins sufficiently meaningful as to justify the conclusion. Merely because a house is the residence of the marriage, though, it should not be considered as totally marital property. I believe that precedents that present the contrary should be limited. See Pittman v. Pittman, 791 So.2d 857, 862-63 (Miss. Ct.App.2001). That case reveals the difficulties with an all one or all the other approach. The opinion stated that individual items of personal property within a house that are brought to the marriage may become marital merely because of their common enjoyment. Id. That is too aggressive a view of marital property rules. Similarly, the residence itself should not always become a totally marital asset.
¶ 27. Separate property that is implicitly given to the other spouse or to the marriage may become marital. The commingling of separate property also may transform it into marital, but the imagery of "commingling" applies poorly to real property. To be basic, if each spouse brings bed sheets to the marriage and they are used interchangeably for the marital bed and without concern about origin, they are likely commingled. The antique heirloom bed itself may not have implicitly been given to the marriage and could remain separate. Similarly, the marital residence has not been mixed but it has been shared. Practically speaking, rarely does commingling or mixing apply to real property. The concept of implied gift does, but factually it may not have occurred.
¶ 28. What is an implied gift or what is commingled should be examined with some care. The use of the residence and its contents for marital purposes should not automatically cause either the residence or its contents to become totally marital absent other circumstances. Based on current caselaw, I accept that this home was marital property. What is worth considering as a change to existing principles is that when separate property such as a home is used to benefit the marriage, that property takes on a dual character. The chancellor should be required to continue to give some weight to its separateness at the same time as its marital aspect is being measured. There is no reason for the home, which is simply a physical structure, regardless of the memories that may become attached to it, to be treated differently than the business.
McMILLIN, C.J., BRIDGES, LEE AND IRVING, JJ., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] The equipment included two chicken broiler houses valued at $177,060; a compost shed valued at $6916; a 60KW generator valued at $8500; and a truck valued at $8500.
[2] We note the amount granted Amparo as an equitable settlement exceeds the total of the marital estate as noted by the chancellor when added with the amount awarded Jack. We can only assume the chancellor looked upon the matter as a form of alimony and reviewed Jack's ability to pay rather than as a piece of the marital estate. It is the only reasonable explanation we can find.