GRIFFIS, J.,
 

 for the Court:
 

 ¶ 1. Billy Stephen McKissack (“Steve”) and Terri McKissack (“Terri”) agreed to a divorce based on irreconcilable differences. They submitted the issues of property division and support to the chancellor. Steve now appeals the chancellor’s division of property and award of periodic alimony to Terri. Steve argues that the chancellor: (1) erroneously applied the family-use doctrine to determine that the Bank of Vernon certificates of deposit should be classified as marital property and (2) awarded an excessive amount of periodic alimony instead of rehabilitative alimony. Terri filed a notice of cross-appeal, but she failed to raise any assignments of error; instead, her brief requests that the judgment of the chancery court be affirmed in all respects.
 

 ¶ 2. We find that the chancellor improperly used the family-use doctrine to classify the certificates of deposit as marital property. The certificates of deposit were Steve’s separate property withdrawn from his corporation, State Termite and Pest Control, Inc. (“State Termite”), and were not converted by commingling or the family-use doctrine. Accordingly, the judgment of the chancellor is affirmed in part and reversed in part. We remand this case to the chancellor for further proceedings consistent with this opinion.
 

 FACTS
 

 ¶ 3. Steve and Terri were married on January 9,1982, in Hot Springs, Arkansas. They had three children during the marriage, all of whom are emancipated. Steve and Terri separated on December 8, 2005, after almost twenty-four years of marriage.
 

 ¶ 4. Steve is the owner of State Termite in Columbus, Mississippi. Steve’s father started the company in' 1971. Steve worked at the company throughout the marriage, but he did not acquire any own
 
 *718
 
 ership in the company until his father died in 2001. His father’s will left all of the shares of company stock to Steve’s mother. Steve’s mother renounced that portion of the will, and Steve inherited ten percent of the company stock. In 2002, Steve’s mother gave Steve the remaining ninety percent of the company stock as a gift. As a result, Steve is now the sole owner of State Termite.
 

 ¶ 5. Terri is a college graduate who now works part time as an interior designer. During the marriage, Terri was responsible for taking care of the couple’s three daughters and the marital home. She was not employed during most of the marriage.
 

 ¶ 6. Steve’s monthly gross salary is approximately $22,000, and Terri’s monthly gross salary is approximately $800.
 

 ¶ 7. Steve and Terri agreed to a divorce based on the ground of irreconcilable differences. However, they submitted the issues of property division and support to the chancellor for determination. The chancellor first determined whether certain properties in dispute were marital or nonmarital assets. State Termite was designated as nonmarital property because it was acquired by Steve through gift and inheritance. At issue in this appeal, however, is the proper treatment of $542,000 that was distributed from State Termite to Steve and placed in certificates of deposit held at the Bank of Vernon. The chancellor classified the entire amount as marital property. The chancellor found that the certificates of deposit had been converted from nonmarital property to marital property according to the family-use doctrine.
 

 ¶ 8. The chancellor entered a final judgment of divorce, which gave Terri ownership of one of the certificates of deposit in the amount of $500,000. The other certificate of deposit in the amount of $42,000 was awarded to Steve. This division was part of a larger property division. Terri was awarded assets valued at $1,234,035.35. Steve was awarded assets valued at $1,080,812.05. Steve retained ownership of his separate nonmarital property-the shares of State Termite valued at $1,000,000 and an apartment complex valued at $212,500. Terri was awarded $6,000 per month in periodic alimony.
 

 ¶ 9. Steve now appeals the chancellor’s classification of the certificates of deposit as marital property and the chancellor’s award of alimony.
 

 STANDARD OF REVIEW
 

 ¶ 10. We review the chancellor’s division of property under an abuse-of-discretion standard.
 
 Shoffner v. Shoffner,
 
 909 So.2d 1245, 1250 (¶ 12) (Miss.Ct.App. 2005). “This Court will not disturb a chancellor’s findings regarding the award or amount of alimony unless there is manifest error.”
 
 Rodriguez v. Rodriguez,
 
 2 So.3d 720, 730 (¶ 26) (Miss.Ct.App.2009) (citing
 
 Armstrong v. Armstrong,
 
 618 So.2d 1278, 1280 (Miss.1993)).
 

 ANALYSIS
 

 1. Whether the chancellor improperly applied the family-use doctrine to classify the Bank of Vernon certificates of deposit as marital property.
 

 ¶ 11. Steve argues that the chancellor misapplied the family-use doctrine to find that the certificates of deposit had been converted to marital property. Specifically, he claims that the family-use doctrine has historically been applied to real and personal property such as household furnishings used in the marital home. Steve asserts that the chancellor should have looked to see whether the certificates of deposit had been commingled with other marital assets because commingling is the proper analysis, not the family-use doctrine.
 

 
 *719
 
 ¶ 12. To equitably divide property, the chancellor must; (1) classify the parties’ assets as marital or separate, (2) value those assets, and (3) equitably divide the marital assets.
 
 Ferguson v. Ferguson,
 
 639 So.2d 921, 928 (Miss.1994). Here, the dispute concerns the first step — the chancellor’s classification of the parties’ assets as marital or separate. The supreme court has adopted the presumption that “[ajssets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties’ separate estates prior to the marriage or outside the marriage,”
 
 Hemsley v. Hemsley,
 
 639 So.2d 909, 914 (Miss.1994).
 

 ¶ 13. Of the parties’ numerous assets, Steve claimed that three assets were his separate property: (1) State Termite, (2) two apartment complexes, and (3) the certificates of deposit. The chancellor classified the company as Steve’s separate property because Steve had gained ownership of the company through inheritance and gift. Importantly, Steve’s ownership was not acquired until the last six or seven years of marriage. The chancellor specifically held that this was not a case where the husband had built the business during the marriage.
 

 ¶ 14. The chancellor next found that the two apartment complexes were Steve’s separate property. Steve testified that he withdrew approximately $900,000 from the company as part of a stock repurchase in which he had sold some of his stock back to the company. He then loaned approximately $600,000 to Millie Rollins to remodel some apartments that she owned. Rollins later repaid the entire loan plus four percent in interest. As the chancellor stated:
 

 These properties are apartment complexes and were the subject of much of the hostility at the trial and also took up a disproportionate amount of the trial time. [Terri] testified that [Steve] had bought these properties with a female working for him in the business named Mildred “Millie” Rollins and that he had hidden his alleged ownership and certainly his relationship with Millie from [Terri].
 

 ¶ 15. The chancellor determined that the apartments were separate property because the funds came solely from State Termite, which was separate property. No marital funds were used in the loan to Rollins, and Terri was not involved in the transaction. The chancellor stated:
 

 the use of the business funds which funds have already been determined as nonmarital property would also disqualify the two apartment properties as marital. This would be the same result if a person inherits cash and immediately invests it in a certificate of deposit. All the earnings, without more, would also be classified as nonmarital.
 

 ¶ 16. Finally, the chancellor considered the certificates of deposit — the asset classification contested in this appeal. As stated above, Steve received a total of $900,000 from the company as part of the stock repurchase, and he loaned approximately $600,000 to Rollins. Sometime after Rollins had repaid the loan, Steve created these certificates of deposit totaling $542,000.
 

 ¶ 17. Steve testified that he spent approximately $350,000 — the approximate difference between $900,000 and what remains in the certificates of deposit ($542,-000) — on various family expenses including living expenses, mortgage payments on the lake house, college expenses for his three children, and automobiles. The chancellor found that the funds in the certificates of deposit originated from the company, which the chancellor had designated as Steve’s separate asset. Thus, the chancel
 
 *720
 
 lor found that the certificates of deposit were also separate property. But the chancellor further found that the certificates of deposit had been converted to marital property through the family-use doctrine.
 

 ¶ 18. “Assets which are classified as non-marital, such as inheritances, may be converted into marital assets if they are commingled with marital property or utilized for domestic purposes, absent an agreement to the contrary.”
 
 Stewart v. Stewart,
 
 864 So.2d 934, 937 (¶ 12) (Miss.2003) (quoting
 
 Boutwell v. Boutwell,
 
 829 So.2d 1216, 1221 (¶ 20) (Miss.2002)). Numerous cases have used the family-use doctrine to convert a separately owned marital home to marital property.
 
 See, e.g., id.
 
 at 938 (¶ 13) (affirming the chancellor’s finding that the family residence and the personal property used in the residence was subject to familial use and lost its character as separate property);
 
 Boutwell,
 
 829 So.2d at 1221 (¶ 21);
 
 Hankins v. Hankins,
 
 866 So.2d 508, 511 (¶ 16) (Miss.Ct.App.2004) (holding that the “long-term family use of the property converted the residential house and lot into marital property”);
 
 Lockert v. Lockert,
 
 815 So.2d 1267, 1269 (¶ 10) (Miss.Ct.App.2002).
 

 ¶ 19. Here, we are asked to determine whether these certificates of deposit, as assets held in a separate account, were capable of being converted to marital property through family use just as personal or real property, such as the family home, may be converted through family use.
 

 ¶ 20. This Court applied the family-use doctrine in
 
 Pittman v. Pittman,
 
 791 So.2d 857, 866 (¶ 30) (Miss.Ct.App.2001). There, the husband claimed that the antique furniture, china, and jewelry inherited by his wife should not have been classified as her separate property.
 
 Id.
 
 This Court found that, in general, inherited property is a party’s separate asset. But we held that: “Regardless of the means of acquisition, though, one spouse’s separate property that has been utilized for family purposes may lose its separate identity.”
 
 Id.
 
 (citing
 
 Johnson v. Johnson,
 
 650 So.2d 1281, 1286 (Miss.1994)). The furniture had been converted to marital property by its placement and use in the marital home.
 
 Id.
 
 at (¶ 31). Whether the china and jewelry had been used by the family was a question of fact that was remanded for determination by the chancellor.
 
 Id.
 
 at 867 (¶¶ 32-33).
 

 ¶ 21.
 
 Pittman
 
 suggested that a spouse could maintain the separateness of his or her property by keeping the property in a separate room or building used only by the owner spouse.
 
 Id.
 
 at (¶ 31). We note that Professor Deborah H. Bell states that the family-use doctrine places Mississippi in a distinct minority. “Two of the leading commentators on property division strongly criticize conversion based on family use without reference to intent. Both suggest that the approach encourages hoarding behavior and runs counter to most spouses’ expectations.” Deborah H. Bell, Bell on Mississippi Family Law § 6.04[l][b] at 164 (2005).
 

 ¶ 22. As seen by the cases cited above, the trend in Mississippi has been to apply the family-use doctrine to physical assets such as the family home, furniture, antiques, china, silver, and jewelry. Here, Terri argues that the chancellor properly applied the family-use doctrine to cash or a cash equivalent such as a certificate of deposit. Terri claims that because Steve used a substantial portion of the $900,000 withdrawn from the company on family expenses, then the remainder of the asset, or here the certificates of deposit, was also converted to marital property. We disagree.
 

 ¶ 23. With most real or personal property, it is simply a question of fact as to
 
 *721
 
 whether the asset was available for the family to use or whether it was kept separate and used only by the spouse claiming the separate property.
 
 See Pittman,
 
 791 So.2d at 867 (¶ 31) (suggesting that a spouse store property in a place only accessible by the owner spouse in order to keep the asset separate and not subject it to the family-use doctrine). We find that the same application of the family-use doctrine to cash or cash equivalents is rather tenuous.
 

 ¶ 24. Terri argues that Steve used a “substantial amount” of the $900,000 withdrawn from State Termite on family purposes, such that the family-use doctrine converted the remainder of the withdrawn funds, which were now held in the certificates of deposit, into marital property. There is no doubt that the real and personal property (automobiles, lake house, etc.) that Steve purchased with this cash, and which was used by the family, was properly determined to be marital property and divided as such in the chancellor’s division of marital assets. However, the family’s use of those assets alone was not enough to pull the remainder of the $900,000, held separately by Steve in the certificates of deposit, into the marital estate.
 

 ¶ 25. The proper analysis would be to consider whether Steve had commingled the separate property with other marital property.
 

 ¶ 26. The source of the funds at issue was a $900,000 distribution — a withdrawal or “draw-down” — from State Termite to Steve. The payment from State Termite to Steve was deposited in Steve’s separate account. Steve does not dispute that he loaned a portion of the funds to Rollins, but that in itself did not commingle the funds with marital property. On the contrary, Steve kept this loan a secret from Terri because he knew that Terri believed he had an inappropriate relationship with Rollins.
 

 ¶ 27. Steve testified that he spent approximately $350,000 of the $900,000 on family expenses. Thus, the assets purchased with the $350,000 were properly classified as marital property. The issue is whether the $542,000 remaining in the certificates of deposit was transmutated, from separate to marital property, by commingling as a result of the approximately $350,000 spent on family expenses.
 

 ¶ 28. In
 
 Johnson v. Johnson,
 
 650 So.2d 1281, 1286 (Miss.1994), the wife inherited several assets during the marriage. A portion of those assets was used for family expenses or placed in the husband’s savings account.
 
 Id.
 
 The supreme court held that portion of the inherited assets, while originally part of the wife’s separate estate, had been commingled and became marital property.
 
 Id.
 

 ¶ 29. The supreme court, in
 
 Johnson,
 
 further addressed the portion of the wife’s inherited assets that was not commingled with funds for the family, stating:
 

 In the case sub judice[,] it is undisputed that the assets inherited by Jane are attributable to Jane’s nonmarital estate. However, that portion of those assets which were commingled with the joint marital estate, i.e., timber sales, for the use of the family had, at the time of trial, lost their nonmarital character by commingling.
 
 See Nelson v. Nelson,
 
 611 So.2d 1113, 1115 (Ala.Civ.App.1992) (commingled funds are marital assets subject to equitable distribution) [ (overruled on other grounds)].
 
 Any assets inherited by Jane but not commingled retained their nonmarital character. Hemsley,
 
 639 So.2d at 914.
 

 Id.
 
 (emphasis added).
 

 ¶ 30. We recognize that there are significant distinctions between
 
 Johnson
 
 and
 
 *722
 
 this case. In
 
 Johnson,
 
 there was no dispute that a portion of the wife’s inheritance was not commingled and remained separate property. Also, the inheritance was not entirely a cash asset. For example, it included a rental house and timberland. However, the supreme court’s holding in
 
 Johnson
 
 suggests that it is possible for a portion of an inheritance to become commingled while another portion of the inheritance remains separate. It follows that the portion of funds Steve withdrew from the company and spent on family expenses was commingled and became marital property while the portion he kept in a separate account remained part of his separate estate.
 

 ¶ 31. Further, for this Court to conclude that the $542,000 in the certificates of deposit was commingled with marital property, we must first find a marital asset with which those funds were commingled. By definition, “[c]ommingled property is a combination of marital and non-marital property[,] which loses its status as non-marital property as a result.”
 
 Maslowski v. Maslowski,
 
 655 So.2d 18, 20 (Miss.1995) (citation omitted). For example, separate property becomes marital property if it is placed in a joint account.
 
 See, e.g., A & L, Inc. v. Grantham,
 
 747 So.2d 832, 839 (¶¶ 21-22) (Miss.1999);
 
 Tillman v. Tillman,
 
 716 So.2d 1090, 1095 (¶ 20) (Miss.1998);
 
 Johnson,
 
 650 So.2d at 1286 (wife’s inheritance placed in savings account controlled by husband).
 

 ¶ 32. The supreme court discussed this requirement in
 
 Pearson v. Pearson,
 
 761 So.2d 157 (Miss.2000). James Pearson created a holding company that held separate assets from his former business.
 
 Id.
 
 at 160 (¶ 6). His wife, Debra Pearson, claimed that these separate assets were subject to equitable division because James had used the assets in his holding company to pay the regular household expenses.
 
 Id.
 
 at 164 (¶ 20). Specifically, she claimed that the payment of family expenses had commingled the separate funds entitling her to a share of the remaining assets in the holding company.
 
 Id.
 

 ¶ 33. The supreme court disagreed finding that “there was no marital asset with which James’s non-marital assets were commingled.”
 
 Id.
 
 Even though James used the assets to pay for family expenses, there was no commingling because James had kept the assets separate by virtue of the holding company.
 
 Id.
 
 Similarly, here, we find no marital asset with which Steve’s separate funds were commingled. Yes, he used a portion of the funds on family expenses. But, just as in
 
 Pearson,
 
 the assets purchased for the family became marital property and were part of the equitable distribution. However, that does not mean that the $542,000 of separate funds that were not spent on the family were commingled with marital funds.
 

 1134. We find that the $542,000 held in the certificates of deposit were not commingled with marital funds. As such, the certificates of deposit remain a part of Steve’s separate estate and should not have been included in the chancellor’s equitable distribution of marital property.
 

 2. Whether the chancellor improperly awarded periodic alimony instead of rehabilitative alimony.
 

 ¶ 35. Steve asserts that the chancellor should have awarded Terri rehabilitative alimony instead of periodic alimony because Terri is a college graduate capable of supporting herself. Specifically, he argues that Terri works only part time at her job as an interior designer. He further claims that Terri suffered no deficit in the equitable distribution of marital property; thus, periodic alimony is not appropriate. Alternatively, Steve claims that
 
 *723
 
 the chancellor’s alimony award of $6,000 per month was excessive in light of the amount of liquid assets awarded to Terri.
 

 ¶ 36. “Alimony awards are within a chancellor’s discretion, and we will not reverse an award of alimony on appeal unless the chancellor abused her discretion in her fact-finding or misapplied the law.”
 
 Elliott v. Elliott,
 
 11 So.3d 784, 786 (¶ 7) (Miss.Ct.App.2009). The chancellor must find that the party requesting alimony suffers a financial deficit after the equitable distribution of property. The supreme court stated:
 

 If there are sufficient marital assets which, when equitably divided and considered with each spouse’s nonmarital assets, will adequately provide for both parties, no more need be done. If the situation is such that an equitable division of marital property, considered with each party’s nonmarital assets, leaves a deficit for one party, then alimony based on the value of nonmarital assets should be considered.
 

 Johnson,
 
 650 So.2d at 1287.
 

 ¶ 37. After the equitable division of marital assets, the chancellor analyzed Terri’s request for alimony under the
 
 Armstrong
 
 factors.
 
 Armstrong,
 
 618 So.2d at 1280. Terri is fifty-one years old and has a college degree. But she has virtually no work experience during the marriage. Currently, she has a monthly income of approximately $800 from her part-time employment as an interior designer.
 

 ¶ 38. The chancellor found that Terri was in need of “ample liquid resources ... to maintain her in some semblance of her accustomed style and manner of living.” The chancellor noted the wide disparity in the parties’ incomes and their ability to earn income. Specifically, the chancellor found that the property Terri received in the equitable distribution would produce some income, but not enough to maintain Terri’s lifestyle. In contrast, the property awarded to Steve, including several rental houses, would earn much more income.
 

 ¶ 39. The chancellor found that Steve retained significant nonmarital assets, including his company valued at $1,000,000, and he had more than enough monthly income ($22,000 per month) to support Terri through periodic alimony. Terri’s alimony award was set at $6,000 per month.
 

 ¶ 40. We find substantial evidence to support the chancellor’s award of periodic alimony. While Steve contends that Terri should have received rehabilitative alimony, that type of alimony is designed to allow “a party needing assistance to become self-supporting without becoming destitute in the interim.”
 
 Hubbard v. Hubbard,
 
 656 So.2d 124, 130 (Miss.1995). However, the chancellor found that Terri did not have the necessary skills or work experience to support herself at the level to which she had become accustomed during the parties’ twenty-six-year marriage. The chancellor’s award of periodic alimony to Terri was not an abuse of discretion.
 

 CONCLUSION
 

 ¶ 41. We hold that the certificates of deposit held at the Bank of Vernon should not have been included in the marital estate; instead, they remained Steve’s separate property. They were not subject to the family-use doctrine, nor were they commingled with a marital asset. With that in mind, we remand this case for the chancellor to revisit the issues of equitable distribution and alimony. These issues are intertwined, and the change in the division of the marital estate may necessitate a change in the award of periodic alimony.
 

 ¶ 42. “Alimony is not a completely independent financial issue in a domestic case,
 
 *724
 
 in which its consideration is hermetically sealed from other financial matters.”
 
 Buckley v. Buckley,
 
 815 So.2d 1260, 1262 (¶ 10) (Miss.Ct.App.2002). Alimony together with the equitable distribution of property work together to provide for the parties after divorce.
 
 Id.
 
 “Therefore, where one expands, the other must recede.”
 
 Ferguson,
 
 639 So.2d at 929.
 

 ¶ 43. In
 
 Lauro v. Lauro,
 
 847 So.2d 843, 850 (¶ 17) (Miss.2003), the supreme court determined that since the case was remanded for further consideration of equitable division, the chancellor should be “instructed to revisit the awards of alimony and child support after he has properly classified and divided the marital assets.” Accordingly, on remand, the chancellor has all the tools of marital dissolution available.
 

 ¶ 44. THE JUDGMENT OF THE CHANCERY COURT OF LOWNDES COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND AP-PELLEE.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.