BARNES, J.,
for the Court:
¶ 1. After four years of divorce proceedings, Amos and Debbie Archie were granted a divorce (“Final Judgment of Divorce and Opinion of the Court”) on March 9, 2010. However, since the 2010 judgment required clarification and correction, the chancery court issued a “Third Amended Order and Opinion of the Court” on May 9, 2012, from which Amos now appeals. Upon review, we find that Amos was erroneously required to pay child support, college expenses, and insurance for his emancipated children, and we reverse and render the judgment on these issues. We also reverse the chancellor’s award of alimony and remand for correction and clarification on the issues of the equitable distribution of marital assets and alimony in accordance with this opinion.
FACTS AND PROCEDURAL HISTORY
¶ 2. Amos and Debbie were married on April 15, 1989. They had two children born of the marriage: Brittney Nicole Archie, born on September 26, 1987, and Amos Corey Archie III (Corey), born on February 21,1990. The marriage suffered from domestic violence and infidelity, and Debbie filed a complaint for divorce on June 14, 2006.
¶ 3. A temporary judgment was entered on August 6, 2007, ordering Amos to pay $500 per month in child support “until further order of the court.” On August 22, 2007, an agreed temporary order was filed, ordering: (1) Amos to pay $600 in monthly child support; (2) both parties to pay one-third of Brittney’s college tuition and book *940 costs; and (3) both parties to pay one-half the medical costs for the minor children. The temporary order also granted Debbie exclusive possession of the marital home. However, this temporary order was later rescinded.
¶ 4. After two hearings before the chancellor — one on March 7, 2008, and one on July 22, 2008 — the parties consented to divorce based on irreconcilable differences. They agreed Debbie would have sole custody of Corey and that Amos and Corey would seek counseling in an effort to rehabilitate their strained relationship. The parties also agreed to submit the remaining issues (child support, alimony, attorney’s fees, college expenses, and division of marital assets) to the chancery court’s discretion.
¶ 5. On September 25, 2009, Debbie filed a petition for citation for contempt, claiming that Amos had failed to pay child support as ordered by the chancery court. Then, on January 25, 2010, the agreed temporary order dated August 22, 2007, was rescinded by the Honorable J. Dewayne Thomas due to lack of jurisdiction. That same day, Amos was found guilty of contempt by the chancellor originally assigned to the case, the Honorable Patricia Wise, and he was ordered to pay $5,550.
¶ 6. A final judgment of divorce (“2010 Order”) was entered on March 9, 2010, awarding Debbie exclusive use of the marital home and the value of the couple’s Prepaid Legal Services stock ($25,557). Although Amos was not given any equity in the marital home, he was ordered to pay the remaining balance owed on the mortgage. Amos was, however, awarded ownership of his eleven rental properties, the value of which was unknown.[1] The judgment also required Amos: (1) to pay one-half of college expenses for Brittney; (2) to maintain health insurance for Corey; (3) to pay one-half of the medical costs for the children; and (4) to “pay [Debbie] reasonable periodic sums of child support in the amount of $180 per month.”
¶ 7. Debbie filed a petition for rehearing for clarification of several issues on March 19, 2010. One concern was that the chancellor failed to provide how Debbie was to obtain the $25,557 value of the legal stock and failed to make a finding as to the current value of the stock. A hearing was held regarding these issues on September 29, 2010.
¶ 8. On October 6, 2010, the chancery court entered an “Order on Motion for Clarification,” identifying scrivener errors (i.e., transposing the names of the two children) in the judgment and holding in abeyance any decision regarding the legal stock, as its value remained in dispute. The record reflects that the majority of the stock was liquidated in 2006, prior to the filing of the complaint for divorce; therefore the value of the stock in the 2010 Order was overstated. The proceeds from the sale of the stock were allegedly used for Brittney’s college education. The order for clarification also acknowledged that Brittney was emancipated, that Corey was a minor, and that the intent was for Amos to pay $180 per month in child support. Finally, the order stated that while Debbie was to maintain health insurance for Corey, Amos was responsible for the amount of the premium, and both parties were to split equally any uncovered medical costs.
¶ 9. After another hearing on April 3, 2012, regarding the value of the legal stock, the chancery court entered a “Third Amended Order and Opinion of the Court” (“2012 Order”) on May 9, 2012. This order contained several changes in the areas of the equitable distribution of assets, as *941 well as the award of child support and alimony. The 2012 Order reduced the value of the legal stock awarded to Debbie to $976.10,[2] but awarded Debbie $250 per month in periodic alimony. The 2012 Order further stated Amos was to: (1) pay $500 in child support “as set forth in the temporary order”; (2) maintain “health and life insurance for the children”; (3) “pay one-half (50%) of all college expenses for both children, Brittney and [Corey]”; and (4) pay half of the medical insurance premium for Corey. Below is a table outlining the changes from the 2010 Order:
[[Image here]]
¶ 10. Amos filed an amended notice of appeal on June 7, 2012.[3] The chancery court erred in its award of child support, college expenses, and insurance; accordingly, we reverse and render the judgment as it relates to those issues. On the issue of alimony and equitable distribution of assets, we reverse and remand for further consideration.
STANDARD OF REVIEW
¶ 11. “The standard of review for a chancellor’s decision is abuse of discretion.” Scott v. Scott, 115 So.3d 847, 849 (¶ 6) (Miss.Ct.App.2012) (citing Townsend v. Townsend, 859 So.2d 370, 372 (¶ 7) (Miss.2003)). Unless we can state with reasonable certainty that the chancery court abused its discretion, “was manifestly wrong, clearly erroneous, or applied an erroneous legal standard,” its factual findings will not be disturbed on appeal. Jones v. Graphia, 95 So.3d 751, 753 (¶ 6) (Miss.Ct.App.2012) (quoting Biglane v. Under the Hill Corp., 949 So.2d 9, 13-14 (¶ 17) (Miss.2007)). Questions of law are reviewed de novo. Scott, 115 So.3d at 849 (¶ 6).
I. Whether the chancellor erred by requiring Amos to pay child support, college costs, and insurance for his adult children.
¶ 12. In the 2012 Order, Amos was required to pay $500 per month in child support payments. However, since Brittney and Corey had reached the age of majority at the time the order was entered, Amos claims that it was error for *942 the chancellor to order him to pay child support.[4]
¶ 13. At the hearing on the motion for contempt in 2009, it was acknowledged that Brittney had recently turned twenty-one. Amos also stated in the January 25, 2010 hearing, regarding his failure to pay child support, that Brittney had “reached the age of 21 in September[ ] 2008?’ Corey’s twenty-first birthday occurred on February 21, 2011, more than a year prior to the filing of the 2012 Order.
¶ 14. A parent has no statutory or common-law duty to support a child who has reached the age of majority. See Hays v. Alexander, 114 So.3d 704, 707 (¶ 12) (Miss.2013). “Legally, a parent is relieved of the duty to support his child once the child is emancipated whether by attaining the age of majority or otherwise.” Meek v. Warren, 726 So.2d 1292, 1293 (¶ 2) (Miss.Ct.App.1998) (citing Nichols v. Tedder, 547 So.2d 766, 770 (Miss.1989)).
¶ 15. Under Mississippi Code Annotated sections 93-5-23 and 93-11-65 (Supp.2012), a chancellor may make a determination that a child has become emancipated when the child has reached twenty-one years of age. If such a determination is made, then “[t]he duty of support of a child terminates upon the emancipation of the child.” Miss.Code Ann. § 93-5-23. Furthermore, the Mississippi Supreme Court held that:
In the absence of a determination of emancipation in a child-support judgment, a child is freed for all the period of his minority from the care, custody, control, and service of his parents (i.e., he is emancipated) upon attaining the age of twenty-one, at which time Mississippi statute provides that his minority terminates. Accordingly, the duty imposed by [Mississippi Code Annotated sjection 93-5-23 for a parent to support [a] child does not extend beyond the child’s minority, which terminates when the child reaches twenty-one years of age, as provided by our Legislature.
Hays, 114 So.3d at 709 (¶ 14) (Miss.2013) (internal citations and emphasis omitted).
¶ 16. In the present case, when discussing the issue of alimony in the 2012 Order, the chancery court stated: “The parties have two children. Their daughter is now 24 years of age and their son is now 22 years of age. Both children have been emancipated by age.” Therefore, the chancellor clearly found that Brittney and Corey were emancipated, and we find the award of $500 per month in child support to be error.
¶ 17. We also find that the order for Amos “to maintain in full force and *943 effect health and life insurance for the children” is erroneous. The supreme court has noted that “[insurance coverage for the benefit of children in divorce cases is an issue of child support.” Arthur v. Arthur, 691 So.2d 997, 1001 (Miss.1997) (citing Brennan v. Brennan, 638 So.2d 1320, 1325 (Miss.1994)). Absent compelling reasons, such as the mental or physical incapacitation of a child, the obligation of a parent ordered to maintain insurance for the benefit of a minor child ceases when the child reaches majority. Id.
¶ 18. Lastly, the chancellor ordered Amos “to pay one-half (50%) of all college expenses for both children, Brittney and [Corey].” The supreme court has stated:
[I]f the [college education] benefit is awarded as child support, that right terminates when the child becomes emancipated[,] ... but if it is awarded as an adjustment of the rights between the parties to the divorce as to who shall share or pay what portion of the expense of a college education, then the right vests and does not terminate although the child does not enjoy that benefit until he may have passed the age of 21.
Stokes v. Maris, 596 So.2d 879, 881 (Miss.1992); see also Crow v. Crow, 622 So.2d 1226, 1230 (Miss.1993) (finding that a parent was contractually bound by an agreement to provide “post-emancipation support in the form of college and other expenses”).[5] However, while contractual agreements to provide post-emancipation support during a child’s college attendance are enforceable, there is no such agreement in the present case.[6] Thus, we find that the chancellor erred in ordering Amos to pay for college expenses for both children.
¶ 19. Since Brittney and Corey have reached the age of majority and were considered by the chancellor to be emancipated, we find that the chancellor erred in requiring Amos to provide support for them. Therefore, the chancery court’s 2012 Order, as it relates to the award of child support, college expenses for the children, and life and health insurance for the benefit of the children, is reversed and rendered.
II. Whether the chancellor erred in requiring Amos to pay periodic alimony to Debbie.
¶ 20. Although the 2010 Order denied Debbie alimony, the chancery court granted Debbie $250 in monthly periodic alimony in the 2012 Order. Amos contends that because Debbie failed to request alimony in her complaint, she is barred from receiving an award of alimony. However, Debbie counters that since she requested the equitable division of all assets and a prayer for “general relief,” the issue of alimony was within the scope of her pleading.
¶ 21. In Crowe v. Crowe, 641 So.2d 1100, 1104 (Miss.1994), the Mississippi Supreme Court upheld a chancellor’s award of alimony to the wife, even though she failed to specifically request alimony. “[U]nder the general prayer, any relief will be granted which the original bill justifies and which is established by the main facts of the case, so long as the relief granted will not cause surprise or prejudice to the defendant.” Id. (quoting Smith v. Smith, 607 So.2d 122, 127 (Miss.1992)). Furthermore, Debbie’s “Findings of Fact and Con- *944 elusions of Law,” which was submitted to the chancery court on April 23, 2012, stated:
If this Court takes away [Debbie’s] right to receive $25,557.00 in stock sale pro-eeeds[,] plus the proceeds of the remainder stock which [Amos] sold after the divorce was over[,] then [Amos] would have a substantially larger estate and would leave [Debbie] in need of alimony and assistance to meet her obligations [•]
[[Image here]]
In order for this Court to achieve equity pursuant to Ferguson and its prodigy, the Court must make [Amos] pay unto [Debbie] in cash the amount of the stock[] that sold just prior to divorce and that after the decree was entered.
(Emphasis added). Therefore, we find that an award of alimony was not barred from consideration.
¶ 22. “Alimony should only be considered when ‘an equitable division of marital property leaves a deficit for one party.’ ” Mauldin v. Mauldin, 107 So.3d 176, 180 (¶ 21) (Miss.Ct.App.2013) (quoting Rogillio v. Rogillio, 57 So.3d 1246, 1248 (¶ 8) (Miss.2011)). “If the equitable division of property leaves neither spouse with a deficit with respect to having sufficient resources and assets to meet his or her needs and living expenses, then no alimony award is appropriate.” Jackson v. Jackson, 114 So.3d 768, 777 (¶ 22) (Miss.Ct.App.2013) (citations omitted).
¶23. The equitable division of marital assets in the 2012 Order resulted in Debbie’s receiving $255,376 in marital assets; Amos’s marital assets totaled $116,982.66. The only change in the division of marital assets from the 2010 Order concerned the reduction in value of the legal stock awarded to Debbie; it was decreased from $25,557 to $967. As already discussed, Debbie requested that the chancery court consider alimony to make up for that asset loss. Debbie claimed that the devaluation of stock would mean that Amos “would have a substantially larger estate[.]” However, as we have noted, even after the stock value was reduced, Debbie’s assets were more than twice of the value of Amos’s marital assets. The change in the value of the stock had no effect on the chancery court’s calculation of Amos’s assets.
¶ 24. After the equitable distribution of marital assets, the chancellor proceeded to consider alimony using the guidelines set forth in Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). She noted that both parties were employed, that Debbie’s net pay was listed at $2,673.95, and that neither party had health issues. It was also mentioned that Amos’s primary debt obligation was the mortgage on the marital home, even though Debbie was awarded the home in the distribution of marital assets. Debbie’s primary debt obligations were her own debts and monthly expenses, which were stated by the chancellor to be $8,401.
¶ 25. We find it significant that these Armstrong findings are identical to those made by the chancellor in the 2010 Order. As such, we must conclude that the chancellor only awarded alimony to compensate Debbie for the devaluation of the Pre-Paid Legal Services stock awarded to Debbie in the distribution of marital assets. In other words, the alimony award could not have been, as the chancellor claimed in the 2012 Order, “[b]ased on the foregoing analysis of the Armstrong factors[.]”
¶ 26. More importantly, the monthly income/expense figures stated by the chancellor in both orders were not a true indication of Debbie’s actual financial situation. The figures were derived from Debbie’s Uniform Chancery Court Rule 8.05 finan *945 cial statement that was filed with the chancery court years earlier, in 2006. The $8,401 expense figure included a monthly mortgage payment of $895 and a monthly auto payment of $701; yet, the record clearly shows that Debbie was no longer responsible for the payment of those expenses. Debbie admitted in a 2008 hearing that she told Amos to come get the car because she could not afford the monthly payment of $701 and that she had not paid the mortgage on the home since August 2007. She also noted that her current car payment was only $320. Her Rule 8.05 statement also noted that some expense items were a yearly rather than monthly sum, but the chancery court failed to make this distinction and included the yearly amounts into the monthly-expense figure. As a result of these errors, Debbie’s monthly expenses were overstated by approximately $3,600.
¶ 27. Additionally, the amount of Debbie’s income stated in the order ($2,673.95) was not adjusted for any salary/job changes since 2006. Debbie testified before the chancery court in July 2008 that she was starting a new job the following month, with a slight decrease in salary. Therefore, we find the chancellor’s Armstrong analysis regarding Debbie’s income and debt was clearly erroneous and merits a remand of the issue for further consideration. See McLeod v. McLeod, 84 So.3d 804, 809 (¶ 27) (Miss.Ct.App.2011) (remanding chancellor’s decision to deny increase in child support as it was unclear whether Rule 8.05 statement reflected father’s current rate of pay).
¶ 28. “The change in one financial award or obligation changes the ‘entire field’ of the financial settlement in a divorce judgment.” Carter v. Carter, 98 So.3d 1109, 1114 (¶ 18) (Miss.Ct.App.2012) (citing Rhodes v. Rhodes, 52 So.3d 430, 450 (¶ 82) (Miss.Ct.App.2011)). The issue of alimony “is not a completely independent financial issue in a domestic case”; it is “intertwined” with the distribution of marital assets. McKissack v. McKissack, 45 So.3d 716, 723-24 (¶¶ 41-42) (Miss.Ct.App.2010) (citation omitted). Both “work together to provide for the parties after divorce.” Id. at 724 (¶ 42). Since the error in the calculation of Debbie’s income and expenses may impact the entire distribution, we reverse and remand this case for the chancellor to reconsider the equitable distribution of the assets and the parties’ income and expenses and, if necessary, the need for alimony.
III. Whether the equitable distribution of marital assets was incomplete due to the chancery court’s failure to value Amos’s rental properties.
¶ 29. Debbie requests reversal of the judgment on appeal for reconsideration of the distribution of marital assets. Her argument is that the chancellor failed to assess the value of the rental properties owned by Amos, and this renders the equitable division of marital assets incomplete. The 2012 Order took note of the rental properties, which were awarded to Amos in the division of marital assets, stating that the “value of the rental properties is uncertain, but the Court takes judicial notice that some of the rental properties are located in depressed areas.”
¶ 30. This issue was not raised by Amos’s appeal, and Debbie has failed to file a cross-appeal. “In order for the ap-pellee to gain reversal of any part of the decision of a trial court about which the appellant brings no complaint, the appellee is required to file a cross-appeal.” Delta Chem. & Petroleum, Inc. v. Citizens Bank of Byhalia, Miss., 790 So.2d 862, 878 (¶ 52) (Miss.Ct.App.2001) (citing Brock v. Hankins Lumber Co., 786 So.2d 1064, 1068 (¶ 19) (Miss.Ct.App.2000)).
*946 ¶ 31. However, based on our decision to reverse and remand, the chancellor may consider all pertinent issues relating to the distribution and valuation of marital assets, including the valuation of the rental properties. Regardless, we find no abuse of discretion in the chancery court’s finding that the value of the rental properties was “unknown.” Amos testified at the July 2008 hearing that the rental properties were all in foreclosure and “worth absolutely nothing[.]” Debbie also acknowledged that the rental properties had “no value.” Both parties had ample opportunity throughout the six-year process of divorce and division of marital assets to provide the chancery court with a specific valuation of the properties in question; they failed to do so.
CONCLUSION
¶ 32. The chancery court’s award of child support, college expenses, and insurance for Amos’s emancipated children was in error, and we reverse and render judgment as it relates to those issues. Additionally, we reverse the chancellor’s award of alimony and remand for further correction and clarification on the issues of the equitable distribution of marital assets and alimony in accordance with this opinion.
¶ 33. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS REVERSED AND RENDERED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND APPELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. The order noted that nine of the properties were in foreclosure.

. Information received from Pre-paid Legal Services showed that as of August 8, 2010, the value of the stock was $976.10. A copy of a check showed that this amount was paid to Amos on August 12, 2010.

. On April 9, 2010, Amos filed a timely notice of appeal of the March 9, 2010 judgment.

. Debbie concedes that both children were over twenty-one at the time of the order, but she claims that the award of child support, including college expenses and insurance, was merely a "scrivener’s error” by the chancery court. Thus, she contends that Amos’s appeal of these issues is without merit. Based upon our review of the record, we cannot state with certainty that the chancery court's awards of child custody, college expenses, and insurance, were merely clerical errors on the part of the judge, and we will address them on their merits.
Debbie argued in her 2008 "Proposed Findings of Fact and Law” and at the March 2008 chancery court hearing that Corey should be entitled to support past the age of majority due to a medical condition, tourette syndrome. However, she has made no claim to this effect on appeal. In fact, she claims in her brief that both children "had the aptitude for and were expected to go to college.” Therefore, we deem this argument abandoned. See Kendrick v. Miss. Farm Bureau Ins., 996 So.2d 132, 133 (¶ 3) (Miss.Ct.App.2008) (Issues not addressed in a brief or supported by authority are considered abandoned and not properly before this Court on appeal.).

. See also Deborah H. Bell, Bell on Mississippi Family Law § 10.07[3][d][i] (2005).

. The only time Amos agreed to pay any college expenses (for Brittney) was in the August 2007 “Agreed Temporary Order” that was subsequently rescinded.