# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00129-COA

**JOHN L. CAPOCACCIA, JR.**                                            APPELLANT

**v.**

**LUCY S. CAPOCACCIA**                                                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 01/14/2022 |
| TRIAL JUDGE: | HON. WILLIE JAMES PERKINS SR. |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CHANCERY COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | A. E. (RUSTY) HARLOW JR. KATHI CHRESTMAN WILSON |
| ATTORNEYS FOR APPELLEE: | CHARLES M. MERKEL JR. YEAGER MATTHEWS BASS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART - 10/17/2023 |
| MOTION FOR REHEARING FILED: | |

## CONSOLIDATED WITH

## NO. 2022-CA-00408-COA

**JOHN L. CAPOCACCIA, JR.**                                            APPELLANT

**v.**

**LUCY S. CAPOCACCIA**                                                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/20/2022 |
| TRIAL JUDGE: | HON. WILLIE JAMES PERKINS SR. |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CHANCERY COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | A. E. (RUSTY) HARLOW JR. KATHI CHRESTMAN WILSON |

ATTORNEYS FOR APPELLEE:          CHARLES M. MERKEL JR.
                                 YEAGER MATTHEWS BASS

NATURE OF THE CASE:              CIVIL - DOMESTIC RELATIONS
DISPOSITION:                     AFFIRMED - 10/17/2023
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., LAWRENCE AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.    John Capocaccia Jr. appeals from the Bolivar County Chancery Court's final order granting him a divorce from his ex-wife Lucy Capocaccia and from the order denying his motion for reconsideration.  John also appeals from a subsequent order holding him in contempt for failing to pay a monetary judgment awarded to Lucy.  The two appeals have been consolidated.

¶2.    On appeal from the chancellor's final order of divorce and order denying his motion for reconsideration, John asserts that the chancellor erred by failing to equitably divide the marital property, ordering him to pay child support in excess of the percentage required by statute, holding him in contempt of a prior court order and awarding Lucy a monetary judgment of $50,118.07, and ordering him to pay for certain college expenses for the minor children.  On appeal from a subsequent order of contempt due to his failure to pay the monetary judgment of $50,118.07, John asserts that the chancellor erred by failing to grant a continuance and by holding him in contempt.

¶3.    Upon review, we find the chancellor made insufficient findings of fact with regard to the equitable division of the marital estate, John's child-support obligation, and payment of the minor children's college expenses.  We therefore reverse these issues and remand the

2

case for further proceedings consistent with this opinion. To the extent that the chancellor's order of divorce required John to pay for the minor children's college expenses beyond the age of majority, we reverse and render. As to all other matters raised on appeal, we affirm.

**FACTS**

¶4. John and Lucy married in 1991. During their marriage, the parties had four children, three of whom were still minors during the parties' divorce proceedings. On January 10, 2018, Lucy filed a complaint for divorce on the ground of habitual cruel and inhuman treatment or, alternatively, irreconcilable differences. John answered Lucy's divorce complaint and filed his own complaint for divorce on the ground of adultery or, alternatively, irreconcilable differences. On March 16, 2018, the chancellor entered an order to grant temporary relief. The order gave Lucy exclusive use of the marital home and responsibility for the mortgage payments. The chancellor also ordered the parties to alternate weekly custody of their three minor children and to assume equal responsibility for the minor children's expenses.

¶5. On June 18, 2018, Lucy filed an emergency motion for temporary relief after the need arose for her to undergo several surgical procedures. The chancellor entered an order on August 3, 2018, that was made effective as of July 5, 2018 ("the August 3, 2018 order"). The chancellor found that Lucy lacked an income at that time due to her health issues and inability to work. By contrast, John was employed with an income. As a result, the chancellor granted John "physical custody of the minor children . . . on a temporary basis" and assigned him "responsib[ility] for their physical custody, care, and cost of maintenance."

3

The chancellor's August 3, 2018 order also specified that Lucy was "not being ordered to pay any child support at the present time due to her stated lack of income" and that John was to "continue to maintain the minor children on the current hospitalization policy being paid by him." In addition, the chancellor noted that both parties had "used a part of their savings and retirement funds to pay debts." The chancellor provided that the parties were to "continue to have temporary joint legal custody of the minor children[] and . . . communicate with each other regarding all needs and concerns about their children." Finally, the chancellor emphasized that the order was only temporary in nature and was not to be "interpreted in any way for the benefit or to the detriment of either [party] on any matter or issue before the court."

¶6. On October 29, 2018, John filed a motion to continue their upcoming trial and to modify the chancellor's August 3, 2018 order. John alleged that Lucy had hidden marital assets during the time period covered by the emergency temporary order, and therefore he asked the chancellor to require Lucy to pay half the minor children's monthly expenses and to reimburse him for half the expenses he had paid. John also filed a motion to compel Lucy to produce certain previously requested documents related to her health issues and income. On February 21, 2019, John filed a motion to modify or "terminate" the August 3, 2018 order and for equitable relief and attorney's fees. John asked the chancellor to compel Lucy to provide a detailed accounting of her income since the entry of the August 3, 2018 order, and he renewed his request that Lucy be required to pay for half the minor children's monthly expenses and to reimburse him for half the expenses he had paid on the children's behalf.

4

¶7.     On August 31, 2020, Lucy filed a motion requesting the chancellor find John in contempt of the August 3, 2018 order and modify John's child-support obligation. A hearing on the parties' pending motions was set for September 21, 2020. On September 14, 2020, however, John's attorney filed a motion to withdraw as counsel of record and to continue the September 21, 2020 hearing to another date to allow John time to retain new counsel. At the beginning of the hearing on September 21, 2020, the chancellor granted the motion by John's attorney to withdraw as counsel of record. John informed the chancellor that he had hired a new attorney, but he stated his new attorney had a previously scheduled conflict that prevented him from appearing in the present matter. The hearing then proceeded on Lucy's request in the August 31, 2020 motion to modify child support. The parties agreed to continue the contempt portion of Lucy's motion until a later date. On September 28, 2020, John's current attorney filed an entry of appearance as John's new counsel of record.

¶8.     On October 2, 2020, the chancellor entered an order to grant Lucy's motion to modify child support. The chancellor found Lucy had proved an after-arising material change in circumstances that warranted a modification of John's child-support obligation with regard to the parties' three minor children. As a result, the chancellor assigned John full responsibility for the minor children's support and directed him to pay Lucy $1,500 a month in child support. John's modified child-support obligation was to begin on or before October 15, 2020, and to continue unless and until the court ordered otherwise. The chancellor noted that all other provisions of the August 3, 2018 order would remain in effect for the time being and that any other matters raised in the parties' pleadings would be addressed at a later date.

¶9. On January 8, 2021, the chancellor held a hearing on the parties' various filings and remaining issues. Relevant to this appeal, the parties presented evidence regarding Lucy's complaint for divorce, Lucy's motion to cite John for contempt and to revise child support, and John's counter-claim for divorce. On September 22, 2021, Lucy filed another motion for a citation of contempt against John and alleged that John had blocked her phone number on his cell phone, failed to communicate with her about the children's needs, and failed to timely pay child support. On October 15, 2021, John filed his own contempt motion against Lucy and asserted that Lucy had interfered with his visitation rights with the parties' youngest child.

¶10. On December 7, 2021, the chancellor entered an order making findings of fact as to the evidence presented during the January 8, 2021 hearing and ruling on Lucy's August 31, 2020 motion for a citation of contempt against John. With regard to the contempt matter, the chancellor found that John had willfully failed to pay for all the minor children's expenses, as specified by the August 3, 2018 order. The chancellor further found that John had not sought any downward modification of his child-support obligation due to an inability to pay. As a result, the chancellor held John in contempt of the August 3, 2018 order and directed him to reimburse Lucy for $50,118.07 in expenses that she had paid on behalf of the minor children between July 2018 and October 2020. The chancellor provided that the "reimbursement shall be repaid within sixty (60) days of the . . . entry of [the December 7, 2021 order,] or satisfactory arrangements to pay [Lucy] shall be made with her within this period."

¶11. The next day, on December 8, 2021, the chancellor held a hearing on Lucy's contempt claims regarding John's alleged failure to communicate with her and to pay his child-support obligation and on John's contempt claim regarding Lucy's alleged interference with his visitation rights. At the close of the hearing, the chancellor issued a bench ruling finding each party in contempt. The chancellor directed each party's attorney to prepare an order of contempt against the other party. After the chancellor's ruling, the following exchange occurred:

| | |
|---|---|
| [John's Attorney]: | Your Honor, I have one more question, if I could. |
| [The Court]: | All right. |
| [John's Attorney]: | The Court entered an order on other issues yesterday. That's what I -- |
| [The Court]: | On other issues? |
| [John's Attorney]: | On some other issues yesterday. |
| [The Court]: | Oh, okay. |
| [John's Attorney]: | And what I wanted to ask the Court is, if the Court is anticipating a ruling on the domestic matter, can we hold any motions, requests, or appeals, and can we stay those until that final order on the divorce comes down so we can deal with all that at one time? |
| [The Court]: | I think you can because . . . the next order will be a final order. |
| [John's Attorney]: | Okay. Thank you, Judge. Can I include that in this order that those things will be held in abeyance until the final order comes down? |
| . . . . | |
| [Lucy's Attorney]: | We have no problem with it, Your Honor. We agree to |

7

|  | it now. There's no reason even putting it in this order. I mean, we can -- |
|---|---|
| [The Court]: | You want to put it in? |
| [John's Attorney]: | Just that any action on that order will be stayed until the Court's final order, and then we can deal with them all at once should we need to. |
| . . . . | |
| [The Court]: | Each one do an order and put that provision in each order. |

¶12. The chancellor's bench ruling was memorialized by two separate orders entered on December 16, 2021, and made effective as of December 8, 2021. The first order held John in contempt for his failure to communicate with Lucy about the children's needs, and the second order held Lucy in contempt for her interference with John's visitation rights. Both contempt orders contained the following language:

> The Court anticipates entering, in the near future, a final order dealing with the respective [p]etitions of the parties for divorce, and accordingly, stays the necessity of either party filing motions or appeals *related to the Court's order entered herein on this date,* until a final order is entered. All deadlines with respect to the filing of such post-trial motions or appeals are extended so as to expire concurrently with the time limits for filing post-trial motions and appeals with respect to the final order to be entered herein.

(Emphasis added).

¶13. Thus, as the record reflects, despite John's attorney mentioning the December 7, 2021 order that had been entered the day before the hearing, neither of the December 16, 2021 orders contained language pertaining to a stay of the filing period for post-trial motions and appeals related to that prior order. Instead, each December 16, 2021 order referenced a stay of the filing period for motions and appeals related only to that specific order but no others.

8

¶14. The chancellor's final order in the matter was entered on January 14, 2022. The chancellor denied Lucy's complaint for a divorce based on habitual cruel and inhuman treatment. After finding that John had proved his claim of adultery against Lucy by clear and convincing evidence, the chancellor granted John a divorce on that ground. The chancellor awarded the parties joint legal and physical custody of the three minor children and ordered the parties to continue to alternate weekly visitation with the children. With regard to child support, the chancellor ordered John to pay Lucy $500 a month for each of the three minor children for a total monthly amount of $1,500. The chancellor further ordered John's monthly child-support obligation to be reduced by $500 as each minor child either reached the age of majority or became emancipated. The chancellor directed "both parties [to] contribute equally to the reasonable financial expenses of the children attending and completing college" and their "necessary and reasonable medical expenses." The chancellor also ordered John to maintain health insurance for the three minor children until the children became ineligible for such coverage. Finally, the chancellor denied all other relief requested by the parties but not specifically addressed in the final order.

¶15. At 3:24 p.m. on January 24, 2022, the court administrator for Bolivar County's Second Judicial District received (by email) John's motion for reconsideration under Mississippi Rule of Civil Procedure 59. In the motion, John asked the chancellor to reconsider the award of child support to Lucy and asserted that the chancellor had failed to address the equitable division of the parties' assets and debts. John also requested that the chancellor "enter an [o]rder altering, amending, and/or vacating the [final o]rder, in part . . . ." Two days later,

9

at 3:58 p.m. on January 26, 2022, the court administrator received (by email) Lucy's response to the motion for reconsideration. The following day, on January 27, 2022, the chancery court clerk for Bolivar County's Second Judicial District received, filed, and entered John's motion to reconsider. The next day, on January 28, 2022, the chancery clerk received, filed, and entered Lucy's response to John's motion to reconsider.

¶16. In his order entered on February 3, 2022, the chancellor denied John's motion to reconsider. The chancellor found that because John's motion to reconsider had not been received by the chancery court clerk until January 27, 2022, the motion had not been timely filed within ten days of the entry of the final order as required by Rule 59. The chancellor therefore treated John's motion as one seeking relief under Mississippi Rule of Civil Procedure 60(b). The chancellor concluded that John had "failed to make any claim or [to] offer any evidence" to support relief under the six enumerated grounds provided in Rule 60 and was instead attempting to reargue the case. As a result, the chancellor denied John's motion for reconsideration under Rule 59 as untimely filed and under Rule 60 for lack of evidentiary proof or support. On February 8, 2022, within thirty days from the entry of the chancellor's final order of divorce and the order denying his motion to reconsider, John filed a timely notice of appeal from both orders.[1]

---

[1] A Rule 60(b) motion filed more than ten days after the entry of the underlying judgment "does not toll the thirty-day time period to file a notice of appeal" from that underlying judgment. *Woods v. Victory Mktg. LLC*, 111 So. 3d 1234, 1236 (¶8) (Miss. Ct. App. 2013). As a result, in many cases involving an appeal from the denial of a Rule 60(b) motion, our review is limited "to whether reconsideration was properly denied under Rule 60(b)," and we lack "jurisdiction to consider the merits of the underlying judgment." *Id.* As discussed, however, John filed his notice of appeal within thirty days from the entry of the chancellor's final order of divorce. Thus, despite the chancellor's denial of John's

¶17. On March 15, 2022, Lucy filed a motion for contempt against John and sent the motion to opposing counsel. In her contempt motion, Lucy claimed that John had failed to comply with the chancellor's December 7, 2021 order because he had neither paid her the prior monetary award of $50,118.07 nor discussed with her a satisfactory arrangement for repayment within sixty days of the entry of the December 7, 2021 order. At the request of Lucy's attorney, the chancellor entered an order on March 30, 2022, to set a hearing on the matter. On April 4, 2022, John was personally served with a summons to appear at the hearing, which the chancellor had set for April 18, 2022. On April 12, 2022, John's attorney emailed John's motion for a continuance to Lucy's attorney and placed the motion in the mail to be filed with the chancery court clerk. The motion for a continuance explained that John's attorney had a scheduling conflict with the April 18, 2022 hearing date and that John wanted to complete discovery on the parties' contempt claims prior to any hearing on the matter. As a result, John requested that the hearing be continued to another date.

¶18. On April 18, 2022, which was the date of the hearing, John's attorney filed with the chancery court clerk his entry of appearance, John's answer to Lucy's contempt motion, John's counter-claim for contempt against Lucy, and John's motion for a continuance. At the beginning of the hearing, the chancellor heard arguments regarding John's motion for a continuance. John's attorney requested that the matter be continued to allow the parties to complete discovery and exchange updated Rule 8.05 financial statements.[2] John's attorney

---

motion to reconsider, we have jurisdiction to address John's appellate arguments regarding the merits of the underlying judgment.

[2] *See* UCCR 8.05.

asserted that after John was served on April 4, 2022, he had lacked sufficient time before the April 18, 2022 hearing to prepare a defense to Lucy's claim of contempt. Although Lucy's attorney acknowledged his receipt of John's motion for a continuance by email on April 12, 2022, he nevertheless opposed the request. Lucy's attorney asserted that he had only received an emailed copy of the motion three business days before the hearing and had not had an opportunity to respond. In addition, Lucy's attorney argued there had been plenty of time prior to the hearing for John to file a more timely motion to continue.

¶19. The chancellor issued a bench ruling and denied John's motion to continue. On April 20, 2022, the chancellor entered an order, made effective as of April 18, 2022, to memorialize the bench ruling. In his order, the chancellor found that John had offered no valid justification for his failure to file his motion earlier. The chancellor also found that John had offered no meritorious claim or defense for his failure to comply with the court's December 7, 2021 order.

¶20. After issuing the bench ruling to deny John's motion for a continuance, the chancellor proceeded to hear evidence regarding Lucy's contempt claim against John. When called as an adverse witness, John acknowledged that he had not made any attempts to pay the prior monetary judgment of $50,118.07 and had not communicated at all with Lucy regarding arrangements to pay the monetary judgment. When asked about the reason for his failure to pay, John testified that he had believed the prior monetary award to Lucy was made pursuant to a contempt order involving a temporary matter. John further testified that he had believed the final order of divorce failed to incorporate the monetary judgment. As a result, John

stated he had interpreted the final order, especially the last paragraph, as dismissing the prior monetary judgment and rendering "anything that was temporarily done before . . . null and void." As the record reflects, the last paragraph of the final divorce order stated the following: "It is finally ordered, adjudged, and decreed that any and all other relief of any kind or nature requested in the counter-petition which is not addressed in this Order is hereby considered and is denied."

¶21. The chancellor issued a bench ruling and found John in contempt of the December 7, 2021 order. Two days later, on April 20, 2022, the chancellor entered an order, made effective as of April 18, 2022, that memorialized his bench ruling. The chancellor found that pursuant to the December 7, 2021 order, John knew he either "should have rendered payment to [Lucy] on or before February 5th, 2022," or "communicated with [Lucy] to come to a 'satisfactory arrangement'" for repayment of the monetary judgment against him. After finding that John's noncompliance was willful and deliberate, the chancellor directed John to be incarcerated for thirty days unless John purged himself of contempt by (1) paying $10,000 by the specified deadline, and (2) thereafter paying $1,000 each month until the remaining balance of $40,118.07 had been paid in full. On April 21, 2022, John filed his notice of appeal from the chancellor's order of contempt.

**STANDARD OF REVIEW**

¶22. In domestic-relations matters, this Court "will not disturb the factual findings of a chancellor when supported by substantial evidence unless the chancellor abused [his] discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard.

13

We review questions of law de novo." *Johnson v. Johnson*, 357 So. 3d 1168, 1173 (¶12) (Miss. Ct. App. 2023) (citations and internal quotation mark omitted).

## DISCUSSION

### I.     January 14, 2022 Final Order of Divorce

¶23.    In his appeal from the chancellor's final order of divorce, John contends that the chancellor (1) failed to equitably divide the marital property; (2) ordered him to pay child support in excess of the percentage required by statutory guidelines; (3) erroneously held him in contempt of a prior court order and awarded Lucy a monetary judgment of $50,118.07; and (4) improperly ordered him to pay for expenses related to the minor children attending and completing college.

#### a.     Property Division

¶24.    John first argues that the chancellor erred by failing to classify and value the parties' property and by failing to make any findings under the factors established in *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994), before equitably dividing the marital estate. As we recently explained,

> to equitably divide property, the chancellor must: (1) classify the parties' assets as marital or separate, (2) value those assets, and (3) equitably divide the marital assets based upon the *Ferguson* factors. Although the chancellor need not evaluate every *Ferguson* factor, the chancellor must consider the factors relevant to the case, on the record, in every case. The policy consideration behind this requirement is not only essential for appellate purposes, but to provide trial courts a checklist to assist in the accuracy of their rulings and to reduce unintended errors that may affect the court's ultimate decision. The absence of an analysis of these factors and failure to apply the law to the facts at hand create error.

*Johnson*, 357 So. 3d at 1175 (¶18) (quoting *Speights v. Speights*, 270 So. 3d 968, 975 (¶27)

14

(Miss. Ct. App. 2018)).

¶25. Here, the chancellor's final order contained no reference to or discussion of the parties' debts and assets. Based on the lack of findings regarding equitable division of the marital estate, we reverse the order as to this issue and remand the case to allow the chancellor to make appropriate factual findings and legal conclusions regarding the classification, valuation, and distribution of the parties' property.

### b.    Child Support

¶26. John also contends that the chancellor erred by ordering him to pay child support in excess of the amount provided in the statutory guidelines for his income bracket. "The award of child support is a matter within the discretion of the chancery court, and it will not be reversed unless the chancery court was manifestly wrong in its finding of fact or manifestly abused its discretion." *Green v. Green*, 349 So. 3d 1187, 1201 (¶51) (Miss. Ct. App. 2022) (quoting *Jefferson v. Jefferson*, 327 So. 3d 1085, 1087 (¶11) (Miss. Ct. App. 2021)).

¶27. At the time of their divorce, the parties had three minor children. Mississippi Code Annotated section 43-19-101 (Rev. 2021) sets forth the statutory guidelines for determining child support. Section 43-19-101(1) provides that for three children, twenty-two percent of a parent's adjusted gross income is presumed for child support. Subsection (2) states that the guidelines established in subsection (1) apply unless the court "makes a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case as determined under the criteria specified in [Mississippi Code Annotated s]ection 43-19-103 [(Rev. 2021)]."

¶28. In his final order, the chancellor never referenced nor made any specific findings of fact regarding John's income or the statutory guidelines for child support. Rather, the chancellor simply directed John to pay $1,500 a month in child support, with the total amount to be reduced by $500 as each minor child either reached the age of majority or became emancipated. As John asserts on appeal, the updated Rule 8.05 financial statement he provided to the chancellor at the January 8, 2021 hearing listed his adjusted gross income as $3,573.58 a month. Based on that amount, twenty-two percent of John's adjusted gross income would be $786.19 a month. John therefore contends that the chancellor ordered him "to pay almost double the presumptively correct amount [for child support] without making any written finding in the record for the deviation."

¶29. Lucy disputes John's assertions regarding the correct amount of his adjusted gross income and his monthly child-support payment. According to Lucy, the chancellor relied on John's earlier testimony from the September 21, 2020 hearing when John stated that he had made $58,000 the prior year in 2019. Following the September 21, 2020 hearing, the chancellor entered an order on October 2, 2020, to modify child support. In his order, the chancellor noted John's single statement regarding his income for the previous year. The chancellor further noted that "[n]either party [had] presented an updated [Rule] 8.05 Financial Statement or any income tax return or W-2 or recent check stub or wages regarding their income or expenses." At that time, the chancellor assigned John full responsibility for the minor children's support and ordered him to pay Lucy $1,500 a month in child support. During the January 8, 2021 hearing, however, both parties provided the chancellor with

updated Rule 8.05 financial statements and testified regarding their income and expenses. As stated, John's Rule 8.05 financial statement, which was admitted into evidence without any objection by Lucy, reflected that his adjusted gross income was $3,573.58 a month.

¶30. The chancellor entered the final order on January 14, 2022. Despite the testimony and evidence presented during the January 8, 2021 hearing, the chancellor's final order did not discuss or reference John's income or the statutory guidelines for child support. Even if we assume Lucy's assertion is correct that the chancellor based the final child-support award on John's September 2020 testimony, twenty-two percent of $58,000 amounts to only $1,063.33 a month in child support under the statute. Thus, even based on this higher figure, the chancellor ordered John to pay child support in excess of the statute's presumption without making any written or specific findings that application of the statute would be unjust or inappropriate. And based on the updated Rule 8.05 financial statement that John provided in January 2021, the chancellor ordered John to pay almost twice the amount set forth in the statute without any explanation or findings regarding the deviation. We therefore reverse the chancellor's award of child support and remand to allow the chancellor to calculate the proper amount of child support under section 43-19-101 and to make specific findings regarding any deviation.

### c. Citation of Contempt

¶31. John next asserts that the chancellor erred by finding him in contempt of the August 3, 2018 order. This matter, however, was not addressed in the chancellor's final order from which John now appeals, and John did not file a notice of appeal from this contempt order

17

within thirty days, as required by Mississippi Rule of Appellate Procedure 4.

¶32. As the record reflects, the chancellor held John in contempt of the August 3, 2018 order in his order entered on December 7, 2021. The following day, on December 8, 2021, the chancellor held a hearing on Lucy's and John's pending contempt motions against each other. The chancellor granted the parties' respective motions and directed each attorney to draft a proposed order holding the other party in contempt.

¶33. Following the bench ruling, John's attorney referenced the contempt order entered the previous day and asked, "[I]f the Court is anticipating a ruling on the domestic matter, can we hold any motions, requests, or appeals, and can we stay those until that final order on the divorce comes down so we can deal with all that at one time?" After Lucy's attorney agreed, John's attorney again requested that specific language be included in the two new contempt orders to the effect "that any action on that order will be stayed until the Court's final order, and then we can deal with them all at once should we need to." In response, the chancellor directed the attorneys to each "do an order and put that provision in each order."

¶34. The two resulting written contempt orders stated the following:

> The Court anticipates entering, in the near future, a final order dealing with the respective [p]etitions of the parties for divorce, and accordingly, stays the necessity of either party filing motions or appeals *related to the Court's order entered herein on this date,* until a final order is entered. All deadlines with respect to the filing of such post-trial motions or appeals are extended so as to expire concurrently with the time limits for filing post-trial motions and appeals with respect to the final order to be entered herein.

(Emphasis added).

¶35. Thus, the record clearly reflects that despite the discussion initiated by John's attorney

regarding the December 7, 2021 order, neither subsequent written order referred to a stay of the filing period for post-trial motions and appeals related to the December 7, 2021 order. Rather, each December 16, 2021 contempt order referenced a stay of the filing period for motions and appeals related to only that particular order. In addition, we recognize that with regard to the filing period for any post-trial motion under Rule 59(e), the chancellor here would have lacked "authority or discretion to extend the 10-day time period." M.R.C.P. 59 adv. comm. note; *accord* M.R.C.P. 6(b).

¶36. Moreover, our caselaw establishes that "where the written judgment varies from the court's oral pronouncements, the written judgment controls and is presumptively the chancellor's true decision. This is true even if it was prepared by one of the parties rather than the chancellor himself." *Pevey v. Pevey*, 270 So. 3d 250, 259 (¶31) (Miss. Ct. App. 2018). Here, the chancellor's written orders never extended the deadline for filing post-trial motions and appeals related to the December 7, 2021 order, and John failed to appeal from the December 7, 2021 contempt order within thirty days, as required by Appellate Rule 4. Moreover, as previously noted, the chancellor's final order, which John has timely appealed, did not address the prior contempt order. We therefore find no reversible error.

### d. College Expenses

¶37. John also challenges the portion of the chancellor's final order that directed him to "contribute equally to the reasonable financial expenses of the children attending and completing college . . . ." John argues that in requiring him to pay half the children's reasonable college expenses, the chancellor failed to consider John's financial inability to pay

19

and his two sons' refusal to have a relationship with him. John also argues that the chancellor failed to clarify that the obligation for college support would end when the minor children reached the age of majority. For these reasons, John asks this Court to reverse and render the requirement that he pay for half the costs associated with the minor children attending and completing college.

¶38. "Parents may be ordered to pay additional amounts over and above child support for additional expenses such as 'health insurance, out-of-pocket medical and other health-related expenses, life insurance, and expenses of a college education.'" *Lacoste v. Lacoste*, 197 So. 3d 897, 906 (¶30) (Miss. Ct. App. 2016) (quoting Deborah H. Bell, *Mississippi Family Law* § 10.07 (1st ed. 2005)). As this Court has previously explained,

> [i]n Mississippi, the duty to send a child to college is not absolute. Rather, it is dependent upon the child's aptitude for college, the child's behavior toward and relationship with the parent, and the parent's ability to pay for the education without affecting his customary lifestyle. One or both parents may be ordered to pay part or all of a child's college tuition and related expenses.

*Cossey v. Cossey*, 22 So. 3d 353, 357-58 (¶20) (Miss. Ct. App. 2009) (citations and internal quotation marks omitted).

¶39. Upon review of the record, we find a lack of evidentiary support and factual findings by the chancellor as to the minor children's "aptitude for college, [their] behavior toward and relationship with [John], and [John's] ability to pay for the education without affecting his customary lifestyle." *Id.* at 358 (¶20). We therefore reverse the portion of the chancellor's final order assigning the parties equal responsibility for their children's college expenses, and we remand to allow the chancellor to further consider this issue and to make appropriate

20

findings of fact.

¶40.    Also regarding this matter, we note that usually "[t]he duty of support of a child terminates upon the emancipation of the child . . . when the child: (i) [a]ttains the age of twenty-one (21) years, or (ii) [m]arries, or (iii) [j]oins the military and serves on a full-time basis, or (iv) [i]s convicted of a felony and is sentenced to incarceration of two (2) or more years for committing such felony . . . ." Miss. Code Ann. § 93-11-65(8)(a) (Rev. 2021). Where the parties have contractually agreed "to provide post-emancipation support during a child's college attendance[,]" this Court has upheld the enforceability of such agreements. *Archie v. Archie*, 126 So. 3d 937, 943 (¶18) (Miss. Ct. App. 2013). No such support agreement exists here between the parties, and in the absence of such an agreement, the chancellor lacks "the authority to order child support in any form, including college expenses, once a child reaches the age of . . . majority, which is the age of twenty-one." *Wise v. Broome*, No. 2020-CA-01316-COA, 2022 WL 213322, at *4 n.7 (Miss. Ct. App. Jan. 25, 2022) (citing *Archie*, 126 So. 3d at 943 (¶18)). Thus, to the extent that the chancellor's final order requires John to pay for the children's college expenses beyond the age of majority, we reverse and render.

## II.    April 20, 2022 Order of Contempt

¶41.    Following John's appeal from the chancellor's final order of divorce, Lucy filed a motion for a citation of contempt due to John's failure to pay the monetary judgment of $50,118.07. On April 20, 2022, the chancellor entered an order to hold John in contempt for his failure to comply with the court's prior contempt order entered on December 7, 2021.

John timely appeals from the most recent contempt order and asserts that the chancellor erred by failing to grant him a continuance and by holding him in contempt.

### a. Motion for a Continuance

¶42. John argues a continuance to the hearing on Lucy's contempt motion was necessary to allow him to develop his defenses and to present evidence of Lucy's unclean hands. "The grant or denial of a continuance is within the discretion of the trial court. The only time an appellate court will overturn the denial for a continuance is when manifest injustice has occurred. Prejudice must result from the denial in order to have that decision reversed." *Kaiser v. Kaiser*, 281 So. 3d 1136, 1144 (¶33) (Miss. Ct. App. 2019) (quoting *Henderson v. Henderson*, 952 So. 2d 273, 277 (¶7) (Miss. Ct. App. 2006)).

¶43. Mississippi Rule of Civil Procedure 6(d) provides that "[a] written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than five days before the time fixed for the hearing, unless a different period is fixed by these rules or by order of the court." Here, in his order denying John's motion to continue, the chancellor noted that John had filed the motion with the chancery clerk on the date of the hearing. Although the chancellor still allowed John's attorney to present the motion at the start of the hearing, the chancellor ultimately concluded that John had offered no valid reason for failing to more timely file and present his motion for a continuance.

¶44. The record also reflects that the hearing at issue was on Lucy's second contempt motion regarding John's continued failure to pay the prior monetary judgment of $50,118.07. The hearing occurred after the parties had participated in multiple proceedings over the

course of several years. During the prior proceedings, the parties had presented all relevant testimony and evidence, including testimony and evidence related to the same ongoing contempt matter.

¶45. Due to both the late filing of John's motion for a continuance and the prior proceedings between the parties on the same contempt matter, we can find no evidence to show that manifest injustice or prejudice arose from the chancellor's denial of John's motion for a continuance. We therefore affirm the chancellor's ruling as to this issue.

### b. Citation of Contempt

¶46. Our review of contempt matters is well established as follows:

> Chancellors have substantial discretion regarding contempt matters. Failure to comply with a court order is prima facie evidence of contempt which must be shown by clear and convincing evidence. When the moving party has shown that the respondent has failed to comply with the judgment, the burden shifts to the respondent to show that his failure to comply with a court's decree was not willful or intentional and without fault.

*Braswell v. Braswell*, 336 So. 3d 1121, 1132-33 (¶41) (Miss. Ct. App. 2021) (citations and internal quotation mark omitted). "Before a party may be held in contempt for failure to comply with a judgment, the judgment must be complete within itself leaving open no matter or description or designation out of which contention may arise as to meaning." *Vincent v. Rickman*, 239 So. 3d 501, 505 (¶16) (Miss. Ct. App. 2017) (citation and internal quotation mark omitted).

¶47. In his appellate brief, John contends that the financial requirements set forth in the August 3, 2018 order, which granted him "physical custody of the minor children . . . on a temporary basis" and assigned him "responsib[ility] for their physical custody, care, and cost

23

of maintenance" were vague and ambiguous. John does not appear to renew this exact argument when discussing the subsequent orders awarding Lucy a monetary judgment and holding him in contempt. Instead, with regard to the December 7, 2021 order that first held him in contempt for his failure to pay the monetary judgment of $50,118.07, John argues that the December 7, 2021 order "was a temporary order, which John believed was overturned by the final order." John fails, however, to cite any record evidence or caselaw to support his assertion that the December 7, 2021 order was temporary in nature. Moreover, as previously discussed, John failed to timely appeal the entry of the December 7, 2021 order.

¶48.    As to the chancellor's more recently entered April 20, 2022 order, which held John in contempt for willfully failing to comply with the December 7, 2021 contempt order, we find no abuse of discretion. At the hearing, John admitted that he had made no attempts to comply with the chancellor's December 7, 2021 order requiring him to pay Lucy $50,118.07 and to communicate with Lucy regarding arrangements to pay the monetary judgment. We also find nothing to suggest that the contempt orders themselves were either vague or ambiguous. As Lucy asserts on appeal, the contempt orders clearly provided "(1) the amount to be paid; (2) to whom that amount is owed; and (3) when [the amount] must be paid by." Thus, based on John's own admissions before the chancellor and our review of the record and the contempt orders, we find clear evidentiary support for the chancellor's determination that John willfully failed to comply with a prior court order. We therefore find no abuse of discretion.

## CONCLUSION

24

¶49. We reverse the chancellor's final order of divorce as to the issues of equitable division of the marital estate, John's child-support obligation, and payment of the minor children's college expenses. We remand these issues to allow the chancellor to conduct further proceedings consistent with this opinion. To the extent that the chancellor's final order directed John to pay for college expenses after the children reach the age of majority, we reverse and render. As to all other matters raised in these appeals, we affirm.

¶50. **APPEAL NO. 2022-CA-00129-COA: AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART. APPEAL NO. 2022-CA-00408-COA: AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR. WILSON, P.J., AND McDONALD, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**